## Commonwealth *v.* Fisher, Appellant.

Argued January 10, 1972. Before JONES, C. J.,
EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MAN-
DERINO, JJ.

*Anthony J. Caiazzo,* with him *Melvin L. Fuhrman,*
for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 20, 1972:

Appellant Adolphus Fisher was tried before a jury and found guilty of second degree murder and sentenced to serve a term of imprisonment of not less than ten years nor more than twenty years. In this appeal he raises questions concerning the selection of the jury, rulings of the court during trial, and the jury charge. We find no error in the jury selection or in the charge of the court. We also conclude that the errors complained of during trial are not reversible error. Accordingly, we affirm the judgment of sentence.

## Jury Selection

Appellant's first contention is that it was an abuse of discretion for the trial court to deny him the opportunity to examine prospective jurors as to their ability to apply the law of self-defense. He attempts to create an analogy between the Commonwealth's right to ask prospective jurors whether under certain circumstances they could impose the death penalty and this defendant's claimed right to ascertain whether a juror could apply the law of self-defense. Cf. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S. Ct. 1770 (1968).

The trial court specifically inquired of every prospective juror whether if selected as a juror that individual could abide by the court's instructions as to the law on every aspect of the case. Appellant's asserted symmetry between the permitted voir dire examination involving the death penalty and his requested voir dire on the subject of self-defense has no legal or factual

basis. There has been no showing of a widespread public concern with a juror's ability to impartially and fairly apply the law of self-defense similar to that involving the imposition of the death penalty. Cf. *Witherspoon v. Illinois,* 391 U.S. at 519, 88 S. Ct. at 1775-76. Absent such a showing or any reasonable basis for the requested extension of the present permissible limits of voir dire we cannot say that the trial court abused its discretion in refusing to allow defense counsel to probe into this area. See *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A. 2d 552 (1967); ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury, §2.4 (Approved Draft, 1968) ("The judge should then [on voir dire] put to the prospective jurors any questions which he thinks necessary. . . .")

Appellant next challenges the propriety of the trial court's sua sponte exclusion of two prospective jurors after they had been accepted by both counsel. After the Commonwealth objected to defense counsel's initial inquiry into a prospective juror's nationality and race the trial court warned counsel to refrain from asking such questions. Nevertheless, defense counsel persisted and during the very early stages of the jury selection two prospective jurors were so questioned. The trial court initially separated these two jurors from the rest of the prospective jurors pending trial selection of the jury, but then recalled them and, over defense counsel's objection, dismissed those two veniremen.

The court indicated that its action was predicated on the belief that such questions were irrelevant to a juror's qualifications,[1] and such inquiries might poten-

---

[1] The purpose of voir dire examination is set out in §2.4 of the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (Approved Draft, 1968): "A voir dire examination should be conducted for the purpose of discovering bases for challenge for cause and for the purpose of gain-

tially mislead a juror and thus make such prospective juror subject to a challenge for cause. See the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury, §2.5 (Approved Draft, 1968) which provides that: "[i]f the judge after examination of any juror is of the opinion that grounds for challenge for cause are present, the judge should excuse that juror from the trial of the case."[2] In addition, here defense counsel fully participated in the selection of the ultimate jury, and there has been no demonstration or even suggestion that defendant was harmed by the trial court's action. Moreover, "[t]he defendant is not entitled to the services of any particular juror but only as to twelve unprejudiced jurors." *Commonwealth v. Moon*, 389 Pa. 304, 308, 132 A. 2d 224, 226 (1957). We conclude that on this record the trial court did not abuse its discretion. The exercise of challenges, of course, is within the province of counsel. Courts should be reluctant to enter this aspect of the trial. We see no reason in logic or in law to disturb the verdict of defendant's fair and impartial jury.

The final contention as to the selection of the jury raised by appellant concerns the constitutionality of the present mode of selecting jury panels in Philadelphia County. The Act of May 10, 1949, P. L. 1066, 17 P.S. §§1251 et seq., provides that the members of the jury panel are to be randomly selected from the lists

ing knowledge to enable an intelligent exercise of peremptory challenges."

[2] The ABA Standards Relating to the Judge's Role in Dealing with Trial Disruptions provide that "[t]he adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his own initiative, at all appropriate times and in an appropriate manner, matters which may significantly affect a just determination of the trial." ABA Project on Standards for Criminal Justice, Standards Relating to the Judge's Role in Dealing With Trial Disruptions, §A 1 (Tentative Draft, 1971).

of the registered voters in the county. Appellant urges that the statutory jury panel is unrepresentative of the general community and therefore unconstitutional because: (1) people under twenty-one are excluded,[3] (2) non-registered persons are excluded, and (3) non-property holders are excluded.

As to the minimum age of the jury panel appellant argues that at the time of the trial he was under twenty-one, and that by systemically excluding those persons under twenty-one the statutory scheme for selecting jury panels denied defendant his asserted Sixth Amendment right to a trial "by his peers". Appellant concedes, as he must, that the Legislature has the power to set some minimum age requirement for jury service. We cannot conclude that the Legislature was acting without a rational basis in determining that the minimum age for voting was an appropriate minimum age for jury service. See *Hoyt v. Florida*, 368 U.S. 57, 82 S. Ct. 159 (1961).

Appellant's second argument is that limiting the selection of the jury panel list to registered voters in Philadelphia County systemically excludes non-registered persons and consequently serves to exclude a discernible "economic, religious and racial class." At trial defendant requested an opportunity to present witnesses to show what he asserts to be the unconstitutionality of the present method of selecting juries in Philadelphia County. This request was denied by the trial court.

We cannot find that it was error to deny defendant the opportunity to present witnesses on this issue. The witnesses that defendant sought to present were the jury trial commissioners, a representative from the registration commission, and the defendant himself. At

---

[3] Defendant's trial was in 1968, predating the Act of July 9, 1971, P. L. , No. 29, 25 P.S. §2811, which lowered the age qualification for voting to eighteen.

most these witnesses could have established only the means by which the present jury panel selection system operates. That fact was not in dispute. The witnesses requested would not have aided defendant in his attempt to show the asserted systematic exclusion of a definable class. Appellant's brief is similarly silent on any specific proof or convincing argument that the present method of jury selection serves as a de facto exclusion of any class. Appellant's offer of proof was quite properly refused.

Appellant's argument that the statutory scheme excludes non-property holders from the jury panel is patently without merit. His reliance on the Act of May 11, 1925, P. L. 561, §§6, 7, 17 P.S. §§1276, 1277, which he contends excludes non-property holders from the jury panel, is misplaced. In the first place, that act applies only to counties of the *second class*. Philadelphia County is a county of the *first class*, defined by the Act of July 10, 1919, P. L. 887, §1, as amended, 16 P.S. §7111, as any county with a population of over "one million eight hundred thousand inhabitants". Secondly, the Act of May 11, 1925, relied on by appellant was recently construed in *Clark v. Ellenbogen*, 319 F. Supp. 623 (W.D. Pa. 1970), to *not* exclude non-property holders from prospective jury panel lists.

### Trial Errors

In an effort to establish a claim of self-defense to the charge of murder, defendant took the stand and gave his version of what happened on the night he killed the deceased. On cross-examination the prosecutor asked defendant to explain inconsistencies between his testimony at trial and the written statement he had given the police prior to trial. The defendant explained that he had told the police the full story but they had failed to record his entire statement.

In an effort to impeach defendant the prosecutor then for the first time raised a subject that had not been covered or raised by defendant in his direct examination. The prosecutor asked defendant whether he had been beaten by the police when he gave the written statement. Defendant replied affirmatively. The prosecutor, over objection, then asked him exactly who had struck him and how many times. Defendant was unable to remember. Over defense counsel's further objection the prosecutor then proceeded to read from the notes of the pre-trial suppression hearing. There defendant specifically claimed police brutality, a contention which he had subsequently dropped at trial. Defendant now argues that because the issue of the voluntariness of the statement was not in any way contested by defendant or defendant's direct examination, this was an impermissible form of impeachment.

We start with the general proposition that in this Commonwealth "a witness may not be contradicted on 'collateral' matters." *McGoldrick v. Pa. Railroad Co.,* 430 Pa. 597, 600, 241 A. 2d 90, 92 (1968). This Court has defined a collateral matter as one which has "no relationship to the case on trial." *Commonwealth v. Petrillo,* 341 Pa. 209, 223, 19 A. 2d 288, 295 (1941). Accord *Commonwealth v. Neill,* 362 Pa. 507, 67 A. 2d 276 (1949) ; 3 Wigmore, Evidence, §1003 (3rd Ed. 1940). Defendant's written confession was determined to be voluntary at the suppression hearing. At trial defendant did not contest its voluntariness. His testimony at trial in this respect was in complete harmony with the Commonwealth's position. Thus the matter of voluntariness, and consequently the question of police brutality, had "no relationship to the case at trial". These issues therefore at trial were clearly "collateral matters".

We are unable to perceive any need for extending in this case the existing permissible scope of impeach-

ment. By not challenging the voluntariness of the confession at trial defendant took a position consistent with that of the Commonwealth. There was therefore no proper basis or need to seek to impeach defendant on a matter that was unchallenged at trial. Thus by injecting the issue of police brutality the Commonwealth was creating a straw man that had no relevance to the trial issues and defendant's trial testimony and dealt with a subject in no sense related to his defense. Such a procedure does not comport with the permissible scope of impeachment.

. Although it was error for the trial court to permit over objection this form of impeachment our review of the record convinces us that in this instance defendant was not prejudiced thereby. Compare *Beyrand v. Kelly;* 434 Pa. 326, 253 A. 2d 269 (1969), and *Flowers v. Green,* 420 Pa. 481, 218 A. 2d 219 (1966), with *Smith v. German,* 434 Pa. 47, 253 A. 2d 107 (1969), and *Mcgoldrick v. Pa. Railroad Co.,* 430 Pa. 597, 241 A. 2d 90 (1968). Here the defendant remained generally consistent with his earlier allegation of police brutality at the suppression hearing. The impeachment attempted by the prosecutor merely served to illustrate that at the time of trial, four months after the suppression hearing, defendant was perhaps somewhat less certain as to exactly which officer had beaten him and how many blows he had received. Review of this entire record fails to indicate that the attempted impeachment—even though impermissible—was of such a prejudicial nature as to warrant the grant of a new trial.

Appellant next argues that the trial court erred in admitting into evidence a written statement which contained certain hearsay assertions made by one Armenious Miller, Jr., to Earl Walden. At trial Earl Walden was a witness for the Commonwealth. His testimony related what the defendant had told him about

the stabbing the day after its occurrence. On cross-examination defense counsel pointed out discrepancies between Earl Walden's testimony at trial and the version of his conversation with the defendant that he had given in a written statement to the police prior to trial.

In an effort to rehabilitate its witness the Commonwealth, over objection, read the rest of Walden's written statement into the record. That portion of the statement dealt with what Armenious Miller told Walden about the night in question. Defendant contends that portion of the written statement constitutes hearsay and its admission was erroneous and prejudicial to defendant.

There can be no doubt that the written statement containing what Miller told Walden is hearsay. McCormick, Evidence, §225 (1954). The Commonwealth's theory in support of its admissibility is that the written statement read into the record is consistent with the testimony of Armenious Miller given earlier in the trial. This consistency, it is urged, in turn gives support to Walden's present recollection of what defendant had told him.

The rule of permissible rehabilitation is not so broad as to permit the use of hearsay on one subject to support the impeached testimony on another subject. In an effort to dispel the effect of prior inconsistent statements it is possible to rehabilitate a witness by showing that he had made prior statements, antedating the prior inconsistent statement, and consistent with his testimony at trial. McCormick, Evidence, §49 (1954). That principle is inapposite to the facts of this case. Here there was no prior *consistent* statement to support Walden's impeached testimony at trial, but rather an *unrelated* hearsay statement which was subsequently corroborated by that declarant's testimony at trial. As one commentator has noted: "[T]he supporting fact must not mere-

ly be logically relevant to explain or refute the impeaching fact, but it must meet the attack with relative direction. The wall, attacked at one point, may not be fortified at another." Id. The admission of that portion of Walden's written statement containing what Miller told Walden was error.

However, our review of the record convinces us that the trial court's error was not prejudicial to defendant. The reason hearsay statements are normally excluded is that the declarant has not been subjected to the scrutiny of cross-examination. Here the defendant did in fact have such an opportunity to cross-examine the declarant. The statements in question were what Armenious Miller said that the defendant told him about the stabbing. Armenious Miller was a witness for the prosecution and gave substantially the same testimony at trial. He was cross-examined quite vigorously by defense counsel. Thus the hearsay statements erroneously admitted into evidence were merely corrobative of testimony already given at trial and subjected to cross-examination.

### Jury Charge

Appellant makes three specific attacks on portions of the jury charge and a general allegation that the charge was unfair and prejudicial to defendant. His arguments are based to a large extent on partial quotes from the charge taken out of context.

Appellant first contends that the trial court erred in charging the jury that: "if you have a conscientious scruple about it [defendant's guilt], you are entitled under our law to stand by your conscientious conviction concerning the evidence." Appellant argues that such a charge is an improper and inadequate replacement for the constitutionally required reasonable doubt standard. What appellant ignores is that on numerous occasions the trial court instructed the jury that de-

fendant could not be convicted if there was a reasonable doubt as to his guilt and had properly defined reasonable doubt to the jury. We fail to see how appellant was harmed by this additional "conscientious scruple" comment.

The trial court also instructed the jury that if the evidence introduced on a matter was in equipoise "you give the benefit of that to the defendant because the defendant is presumed to be innocent." No exception was taken to this portion of the charge. Furthermore, it is substantially similar to a charge requested by defense counsel. Indeed, the similarity was pointed out to defense counsel during trial and he replied: "Fine, Your Honor, I think that is fair enough."

In the charge to the jury the court instructed: "You understand, members of the jury, that all twelve of you must agree. Your verdict must be unanimous, all twelve of you must agree." Appellant urges that such a charge was error. In *Commonwealth v. Peterman,* 430 Pa. 627, 637, 244 A. 2d 723, 729 (1968), this Court explicitly upheld such a charge: "[I]t was not error for the trial court to instruct the jury that its verdict must 'reflect the unanimous vote of all of you.' . . . The effect of such instruction was simply to inform the jury that their verdict could not be rendered by a majority vote but only by a unanimity of opinion."

There is no merit in appellant's assertion that the charge to the jury was unfair and prejudicial to defendant. On the contrary our review of the full charge discloses that it was impartial, thorough and fair.

The judgment of sentence is affirmed.