389 A.2d 1172

**COMMONWEALTH of Pennsylvania**

v.

**Walter BODGE, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 22, 1976.

Decided July 12, 1978.

Calvin S. Drayer, Jr., Assistant Public Defender, Norristown, for appellant.

Ross Weiss, First Assistant District Attorney, and William T. Nicholas, District Attorney, Norristown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

After a jury trial, appellant was convicted of eleven charges arising out of an armed robbery. Post-verdict motions were denied, and appellant was sentenced. Because of our disposition, this case must be remanded for further proceedings.

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, the following was ad-

duced at trial. On June 6, 1975, two individuals entered the home of Mr. Joseph Criville and attempted to force him to open a wall-safe in his basement. Ultimately, Mrs. Criville opened the safe, and the robbers escaped with $21,000. The thieves also absconded with Mr. Criville's business records.

About one week after the incident, the Norristown police, suspecting that appellant had participated in the robbery, took him to the Criville residence for possible identification. Although Mr. Criville thought that appellant resembled one of the robbers, he could not be positive because the robber had worn a full beard that, in effect, disguised his face. Appellant was therefore released.

Three days later appellant contacted Mr. Criville and requested a meeting. At the meeting, appellant offered to sell information concerning the robbery and to obtain the return of the business records. During the next several months at least two more meetings took place. At these meetings, appellant restated his offer and described in great detail the physical layout of the Criville residence as well as the manner in which the robbery took place. Eventually, appellant admitted his complicity in the crime.

Prior to his arrest, appellant requested a meeting with the local District Attorney. Appellant asked for immunity from prosecution and three thousand dollars in return for information relating to the robbery. The request was refused, and appellant was thereafter arrested.

At trial, appellant testified on his own behalf. He denied participation in the robbery, claiming that he had been informed of the details of the crime by other individuals. On cross-examination, appellant stated that he had refused several deals which had been offered by the District Attorney's office. He specifically testified that he never asked for immunity or for three thousand dollars. On rebuttal, Mr. William Nicholas, Esquire, the District Attorney of Montgomery County, testified as to his conversation with appellant. According to Mr. Nicholas, appellant had admitted complicity in the robbery and had demanded immunity from prosecution. The primary problem in the instant case

stems from the fact that according to the District Attorney, appellant was informed prior to the making of the admissions that his statements would be considered "off-the-record."

Appellant first contends that his admission of complicity should have been suppressed on the ground that appellant's prior waiver of his *Miranda* rights was nullified by the District Attorney's assertion that appellant's statement would be considered off-the-record. This issue is waived because appellant never moved, either prior to or at trial, to suppress the oral statement. Defense counsel did object at trial; the objection was based on the ground that the "information was given in confidence." (NT 2a). There was clearly no confidential relationship between appellant and the District Attorney, and therefore this objection was properly overruled. Defense counsel later asked the court whether appellant had been informed of his *Miranda* rights prior to the conference. (NT 30). The Commonwealth introduced evidence demonstrating that appellant had been so informed. At no point did appellant object on the grounds that his statements were involuntary or that the District Attorney's assertions vitiated the effect of the prior *Miranda* warnings. The issue is therefore waived. *Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975); *Commonwealth v. Clair* 458 Pa. 418, 326 A.2d 272 (1974).

Appellant also contends that trial counsel's failure to move at trial for the suppression of the inculpatory statements on the above recounted basis constitutes ineffective assistance. Appellant cites *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975), in support of his argument.

In both *Garrity* and *Triplett*, the defendants, police officers, were the subjects of investigations into alleged criminal acts committed in the course of their duties. Prior to questioning, they were informed of their *Miranda* rights; however, each defendant was also informed, or otherwise aware, of certain regulations which provided that failure to

testify would result in dismissal from employment. Inculpatory statements were thereafter obtained from each defendant.

In *Commonwealth v. Triplett, supra,* the confession was suppressed pre-trial based on *Garrity v. New Jersey, supra.* At trial, the Commonwealth used the suppressed statements to impeach appellant after he testified. Our supreme court refused to apply the decision in *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and held that where "any statement of a defendant [is] declared inadmissible for any reason by a suppression court[,] [it] cannot be used for the purpose of impeaching the credibility of a defendant who elects to testify on his own behalf at trial." 462 Pa. at 248–49, 341 A.2d at 64. *Triplett* is inapplicable to the instant case, however, because appellant's statements to the district attorney had never been suppressed.

The Supreme Court in *Garrity,* held that the confessions were involuntary, concluding that

> "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits used [sic] in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic." 385 U.S. at 500, 87 S.Ct. at 620.

In contrast with *Garrity* is the Supreme Court's recent decision in *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). In that case, the defendant, who was a suspect in a burglary case, went to the police barracks to discuss the matter with the investigating officer. When the defendant arrived he was told that he was not under arrest. During the interrogation, the investigating officer falsely stated that the defendant's fingerprints had been found at the scene. After about five minutes the defendant confessed. The defendant was then informed of his *Miranda* rights. The Supreme Court reversed the lower court's order of suppression, holding that Mathiason had not been placed in custody or otherwise deprived of his freedom of action in any significant way. The officer's false statement was held

to have no relevance to the issue of whether Mathiason had been in custody for the purpose of the *Miranda* rule.

"In Pennsylvania 'custodial interrogation' has been interpreted to mean either questioning . . . 'while in custody *or while the object of an investigation of which [the defendant] is the focus,* . . .' *Commonwealth v. Feldman,* 432 Pa. 428, 432–33, 248 A.2d 1, 3 (1968) *Commonwealth v. D'Nicuola,* 448 Pa. 54, 57, 292 A.2d 333, 335 (1972) (emphasis added). Subsequent to these Pennsylvania cases, the United States Supreme Court in *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) explained that the *Miranda* Court 'specifically defined "focus," [of an investigation] for its purposes, as "questioning initiated by law enforcement officers *after* a person has been taken into custody or otherwise deprived of his action in any significant way".' "

*Commonwealth v. McLaughlin,* 475 Pa. 97, 379 A.2d 1056, 1057–58 (1977).

The court in *McLaughlin* noted that there was no difference between the federal and state tests for custodial interrogation.

■ Despite the Supreme Court's decision in *Mathiason,* we are unable to conclude that appellant's claim in the instant case is without arguable merit. It is entirely possible that a confession could have been coerced even if *Miranda* warnings were not initially required. The facts surrounding the incident were not fully explored since the issue was not raised before the lower court. There is also no indication as to whether counsel had any reasonable basis for the decision not to move to suppress at trial. Therefore, the case must be remanded for a hearing to determine whether counsel's decision had any reasonable basis. *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975).

■ It should also be noted that appellant does not claim that counsel was ineffective for failing to file a pre-trial motion to suppress. Thus, if the lower court determines that appellant had the opportunity prior to trial to make such a motion and that the interests of justice would not

have required the court to consider the motion if it had been made during trial, the issue will be waived irrespective of counsel's motivation. *See, e. g., Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth v. Brown,* 250 Pa.Super. 504, 378 A.2d 1262 (1977); *Commonwealth v. Page,* 246 Pa.Super. 380, 371 A.2d 890 (1977); *Commonwealth v. Williams,* 229 Pa.Super. 390, 323 A.2d 862 (1974); *Commonwealth v. Brown,* 226 Pa.Super. 30, 312 A.2d 428 (1973). If it is determined that counsel had no reasonable basis for his decision and that the issue has not been waived, the lower court must then determine the merits of the claim. If the claim is meritorious, appellant shall be granted a new trial at which the confession shall be suppressed. If the claim is not meritorious, the judgment of sentence shall be affirmed.[1]

Appellant's final contention is that counsel was ineffective in failing to object to portions of the District Attorney's testimony on the grounds that it constituted impeachment on a collateral matter. This contention is without arguable merit.

*Commonwealth v. Fisher,* 447 Pa. 405, 290 A.2d 262 (1972), illustrates the parameters of the rule prohibiting impeachment on matters which have no relationship to the case on trial. In that case, the defendant attempted to explain certain inconsistencies between his trial testimony and a prior written confession by saying that the police had failed to record his statement accurately. The Commonwealth then attempted to impeach the defendant by questioning him about pre-trial allegations that the confession had been coerced by physical brutality. This was held to be reversible error because appellant did not contest the voluntary nature of the testimony at trial.

1. Appellant also contends that trial counsel was ineffective for failing to object to certain allegedly hearsay statements made by the District Attorney. Appellant refers us to numerous instances where the District Attorney testified concerning statements made by the victim. Suffice it to say that appellant's contention has arguable merit and this issue must also be remanded for a determination of whether counsel had a reasonable basis for his failure to object.

■ In the instant case, appellant repeatedly denied any involvement in the crime. A request for immunity is obviously relevant to show that appellant thought he had some possible involvement in an offense. Appellant could have acknowledged the request and then attempted to explain his prior behavior. If he had pursued this tack, *Fisher* would control and the District Attorney could not have testified. Under the circumstances of this case, the Commonwealth's tactics were proper.

Based on the foregoing, the judgment of sentence is vacated and the case is remanded for further proceedings.

CERCONE, J., files a dissenting opinion in which HOFFMAN, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

CERCONE, Judge, dissenting:

The instant appeal contests appellant's being found guilty by a jury of eleven offenses arising from an armed robbery committed in Norristown on June 6, 1975. Appellant argues, *inter alia,* that the court erred in permitting the District Attorney of Montgomery County, William Nicholas, to testify concerning appellant's alleged confession of guilt. I would hold that the confession was improperly admitted, will reverse the judgments of sentence and remand for a new trial. The relevant facts of the case are as follows:

On June 6, 1975, Mr. Joseph Criville, responding to knocking at the front door of his home, was confronted by a tall, thin and disguised man wielding a pistol. The gunman ordered Mr. Criville to lie, face down, in the foyer of his home. His hands were bound behind his back as a tall, heavy-set man, also armed and disguised, entered his home. Mr. Criville was then helped to his feet and led through the kitchen of his home into his basement where he operated an office for his building maintenance company. The two gunmen appeared to be thoroughly familiar with Mr. Criville's home, and they knew that in his basement office Mr.

Criville concealed a safe behind canvas in which he kept a considerable quantity of cash.

Despite numerous threats of death and maiming, once in the basement, Mr. Criville refused to open the safe or give the robbers the combination. At that timely point, Mrs. Criville arrived home with the couple's infant daughter and was confronted in the kitchen by the thin gunman. After putting the child to bed Mrs. Criville was escorted to the basement where she saw her husband lying on the floor with the heavy-set man holding a gun to his head. With his wife and daughter in jeopardy Mr. Criville made several attempts to open the safe but, overwrought with fear, he failed. Ultimately, Mrs. Criville succeeded in opening the safe. The robbers removed a cash box containing approximately $21,-000 and loaded the cash into a vinyl bag they had brought for that purpose. They also stole two of Mr. Criville's business ledgers and, after threatening to injure the Criville baby if the couple reported the incident to the police within fifteen minutes, left the home by different exits. Immediately extricating himself and his wife, Mr. Criville pursued the culprits and caught a glimpse of them as they escaped, sans disguise, in a waiting pick-up truck.

On June 13, 1975 appellant, Walter Bodge, appeared at the Criville's residence in the company of the police as a suspect for identification. At that time Mr. Criville was unable to state that Bodge, also a large man, was one of the intruders who robbed him despite his substantial physical similarities to the heavy-set robber. Therefore, Bodge was released. Brazenly, however, several days later Bodge contacted Mr. Criville and arranged to meet him to discuss the robbery and the possible return of the business ledgers and most of the stolen cash. At the meeting, which was monitored by the police, Bodge indicated considerable knowledge about the mechanics of the robbery and asked for $5,000 in return for supplying information which would lead to recovering the money and the books. Mr. Criville replied that he did not have that much money. After Bodge suggested that Mr. Criville sell some of his property to raise the money, the

meeting concluded with Bodge's threat to kill Mr. Criville if he reported their conversation to the police.

On June 24, 1977, Bodge arranged another meeting with Criville, and once again the police monitored it. At this meeting Bodge reiterated his offer to sell the ledgers back to Mr. Criville for $5,000 and, in addition, offered to permit Mr. Criville to hide in a closet in Bodge's apartment while Bodge discussed the robbery at his apartment with one of the participants in the robbery. Because Mr. Criville manifested doubt concerning Bodge's story, Bodge supplied additional details about the crime, including the fact that it was "masterminded" by one of Mr. Criville's relatives and that Mr. Criville had faked being sick to his stomach when he was lying on the floor in the foyer. Although he had not admitted being an accomplice, various statements Bodge made demonstrated knowledge of the crime which Bodge could only have learned by being one of the perpetrators or by being privy to an accomplice.

On August 28, 1977, Bodge, in this strange interlude between victim and criminal, arranged a third meeting with Mr. Criville. At this meeting Bodge asked $1,500 for the names of the robbers, and $1,500 more for information which would lead to the return of the money. Mr. Criville then insisted that Bodge prove he could perform his part of the contract. To assure Criville, Bodge described the inside of the Criville home in detail and eventually admitted that he was the big man who held the gun to Mr. Criville's head in the basement. He said he would "turn state's evidence" if he were given immunity.

As a result of this meeting District Attorney Nicholas arranged for Bodge, Mr. Criville, and Detective Salamone to meet at the district attorney's office. While all four were present Bodge indicated that he would testify for the Commonwealth if he were given $3,000 and immunity from prosecution, but he repeatedly denied having admitted to Mr. Criville that he was one of the robbers. At this point, Detective Salamone and Mr. Criville left the office. There ensued a conversation, which Mr. Nicholas admittedly prom-

ised would be "off the record," between Mr. Nicholas and Bodge wherein Bodge showed the value of his potential testimony by again admitting to being the big man who held the gun to Mr. Criville's head. Mr. Nicholas understandably refused Bodge's demand for immunity and $3,000 and stated that Bodge would be arrested for the crime based upon the prior discussions Bodge had with Mr. Criville.

At trial Mr. Criville testified to the contents of all the meetings with Bodge except the last meeting at the district attorney's office. Indeed, on cross-examination he denied having met with Bodge in Mr. Nicholas' office; but, on re-direct, he testified that he had denied that meeting only because he understood it was "off the record."

After the Commonwealth rested its case, Bodge took the stand in his own defense. He admitted an unsavory background and a reputation as a "con-man" with prior convictions, but he denied being an armed robber, and denied having admitted committing the instant robbery. In fact, he testified, the district attorney contacted him about the robbery and offered him immunity to testify, but they refused to pay him for information. He said that he declined their offer because, being innocent, he did not need immunity, but he needed money. It is important to note, however, that Bodge never expressly testified concerning his "off the record" discussion with Mr. Nicholas.

As a rejoinder the Commonwealth called District Attorney Nicholas to the stand; and, for the first time, the jury learned over objection that Bodge admitted complicity at the district attorney's office as well as to Mr. Criville, and demanded immunity from prosecution for the Criville robbery. Mr. Nicholas also admitted that he had promised the discussion would be "off the record." Subsequently, the jury returned its verdict of guilty.

Counsel for appellant Bodge argues that the trial court erred in permitting Mr. Nicholas to testify to the content of the "off the record" conversation he had with Bodge. While numerous reasons are advanced in support of this argument, I would only reach one of them, because I feel that appel-

lant's reliance on *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975) is adequate grounds for granting appellant a new trial.

In *Commonwealth v. Triplett,* a police officer was charged with burglary and related offenses, and some of the evidence offered against him were statements he made under interrogation. Prior to interrogation Triplett had been advised that his refusal to answer questions could result in his termination as a police officer pursuant to Section 10–110 of the Philadelphia Home Rule Charter. As a consequence, Triplett made several admissions concerning his role in the burglary. Triplett was then given *Miranda* warnings, and he again admitted taking part in the burglary. The admissions were ordered suppressed prior to trial; but, after Triplett testified at trial contradicting the suppressed admissions, the trial court received the admissions into evidence under *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In reversing the judgment of sentence in *Triplett* our Supreme Court could have relied simply upon *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).[1] Instead, the Court chose to go further and expressly rejected *Harris v. New York* as the law of Pennsylvania.[2] In so doing the Court stated: "We are of the opinion that any statement of a defendant declared inadmissible for any reason by a suppression court cannot be used for the purpose of impeaching the credibility of a defendant who elects to testify on his own behalf at trial." *Commonwealth v. Triplett,* 462 Pa. at 248–49, 341 A.2d at 64. Since appellant's confession to Mr. Nicholas in the instant case was given under the express promise that their discussion was "off the record" (which logically can only be understood to

1. See *Commonwealth v. Triplett,* 462 Pa. at 249–54, 341 A.2d 62 (Concurring Opinion by Pomeroy, J.).

2. The official report of this case fails to establish whether Justice Roberts participated in its consideration or decision. See 462 Pa. at 245, 341 A.2d 62. However, Justice Roberts' concurring opinion in *Commonwealth v. Woods,* 455 Pa. 1, 7, 312 A.2d 357 (1973) and *Commonwealth v. Romberger,* 464 Pa. 488, 498–99, 347 A.2d 460 (1975) leave little doubt that he fully supports this rationale.

mean that anything Bodge said would not be used against him), appellant was induced to speak in the belief that he was not incriminating himself. Therefore, his confession was suppressible.

The Commonwealth raises three arguments against applying *Triplett* in the instant case, two of which suffer from the same flaw. The Commonwealth asserts that Bodge's confession to Mr. Nicholas was admissible in rebuttal because Bodge voluntarily appeared at the district attorney's office and was not in custody; furthermore, Bodge was given the additional protection of *Miranda* warnings prior to making any statements.[3] The error in this argument is that it ignores the promise which induced Bodge to confess—that nothing Bodge said would be used against him—coupled as it was with the contingent benefit of immunity and reward.[4]

A waiver of the Fifth and Fourteenth Amendments' protection against self-incrimination must not only be voluntary, it must be knowing and intelligent. *Miranda v. Arizona,* 374 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Commonwealth v. Jones,* 457 Pa. 423, 434, 322 A.2d 119 (1974). The Commonwealth can hardly maintain that the accused knowingly and intelligently waived his right against self-incrimination when the Commonwealth, itself, promised that statements made would not be used to incriminate him. Such a promise effectively countermands the protection afforded by *Miranda* warnings and, in reality, puts the promisee in a worse position that an accused who is simply not apprised of his rights. Furthermore, in the instant case, the hope of immunity and reward which the district attorney tacitly extended, would create an inducement to falsify. In such situations courts have long held confessions to be

3. This argument, of course, disputes the presence of the predicate of *Triplett-type* cases; that is, the Commonwealth's possession of a confession inadmissible in its case in chief. In other words, the Commonwealth is arguing that they could have introduced appellant's confession *even if appellant had not testified.*

4. It should not be ignored that Bodge's prior discussions with Mr. Criville most likely constituted crimes in and of themselves. Therefore, regardless of whether or not Bodge actually committed the robbery, the spectre of criminal prosecution loomed on the horizon.

unreliable and, therefore, inadmissible. See generally 23 C.J.S., Criminal Law § 825 (1961). Hence, I find unpersuasive the Commonwealth's argument that the voluntariness of appellant's presence at the district attorney's office, and the provision of *Miranda* warnings rendered appellant's confession admissible in rebuttal.

The Commonwealth's remaining argument against applying *Triplett* in the instant case is a procedural one, resting upon a strict interpretation of the language from *Triplett* quoted above. Since in the instant case there was no court order suppressing appellant's confession to Mr. Nicholas, the Commonwealth argues that appellant has not complied with an express condition of *Triplett;* that is, the confession was not "declared inadmissible . . . by a suppression court." [5] This argument also lacks merit. First, it is entire-

---

[5] It is true that counsel's objection at trial rested on the fact that Bodge's confession was "in confidence." In my judgment, in the context of this case counsel clearly was not alluding to any confidential relationship between Mr. Nicholas and Bodge, but rather to the fact that Mr. Nicholas had promised any statement Bodge made would not be used against him. While this objection was not as particular as possible, it was adequate to serve the two principal purposes of objections: signifying that there is an issue of law and giving the court notice of the terms of the issue. See 1 Wigmore on Evidence § 18 at p. 322 (3rd ed. 1940).

In any event even if I found this objection rested on improper grounds, a *Twiggs* remand would not be necessary to determine the effectiveness of counsel's representation in this case.

First, an objection raised at trial which rests on untenable grounds can hardly be said to have "some reasonable basis designed to effectuate [a] client's interests." *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). Obviously, the alternative not chosen offered a potential for success substantially greater than the tactic actually utilized. *Commonwealth v. Turner,* 469 Pa. 319, 324, 365 A.2d 847 (1977). Since counsel's improper objection occurred because he was unaware at the time of the proper alternatives, his representation was arguably ineffective. *Commonwealth v. Fallings,* 251 Pa.Super. 365, 380 A.2d 822, 824 (1977). Second, as the text of this opinion indicates, had the appropriate objection been made, it should have been sustained by the court. Cf. *Commonwealth v. Fisher,* 243 Pa.Super. 128, 137, 364 A.2d 483 (1976). Finally, the Commonwealth concedes that trial counsel did not know of appellant's "off-the-record" confession. Coupled with the fact that the Commonwealth had promised not to use any statement Bodge made when meeting with Mr. Nicholas, the interests

ly likely that, even if counsel knew of the meeting with the district attorney and appellant's confession, he did not seek to suppress the confession because the Commonwealth had promised not to use it. Second, a pre-trial suppression order is not necessary to render a confession inadmissible. Pa.R. Crim.P., Rule 323(b) provides that a motion to suppress may be granted at trial if "the opportunity did not previously exist, or the interests of justice otherwise require." In the instant case, Mr. Criville's initial denial that a meeting took place at the district attorney's office, the Commonwealth's failure to proffer the confession in its case in chief, and the promise that the confession would be "off the record" combine to persuade us that, practically speaking, the opportunity to suppress the confession did not previously exist and that interests of justice required that it be suppressed when offered at trial in rebuttal.

For the foregoing reasons, the judgments of sentence should be reversed and the case remanded for a new trial.

HOFFMAN, J., joins in this dissenting opinion.

of justice clearly required that the court suppress the confession when it was offered, assuming a proper objection was made. Pa.R. Crim.P. 323(b). See *Commonwealth v. Williams,* 229 Pa. Super. 390, 323 A.2d 862 (1974). Hence, even if we had found counsel's objection to be inadequate which we have not, the record would be complete for the purposes of determining the ineffectiveness of counsel, and a remand for further inquiry into the matter would simply provoke another appeal. See *Commonwealth v. Holmes,* 468 Pa. 409, 414, 364 A.2d 259 (1976); *Commonwealth v. Hall,* 430 Pa. 163, 242 A.2d 241 (1968).