## COMMONWEALTH OF PENNSYLVANIA, Appellee

v.

## John CARTER, Appellant.

Superior Court of Pennsylvania.

Submitted April 19, 2004.

Filed July 23, 2004.

area as according to the "Cussewago Creek and a wooded hill to the south, the wooded Water Company land to the Northwest, the industrial park to the Northeast, and the City of Meadville to the East," which are the boundaries of the subdivision subject to the restrictions. *See* Majority Opinion, at 876 (indicating that, in addition to the northeast boundary with the industrial park, "[t]he remainder of the restricted tract is bounded by wooded land to the northwest, the Cussewago Creek to the south and west, and the City of Meadville to the east"). As the majority notes, this Court in *Deitch v. Bier,* 460 Pa. 394, 333 A.2d 784 (1975), required at least an express consideration of adjoining tracts in the assessment of the impact of changes to an immediate neighborhood. *See id.* at 396–97, 333 A.2d at 785.

2. Although I agree with Mr. Justice Castille that the prevailing sympathy in the neighborhood is with the volunteer fire department, the relevant legal analysis, designed to balance the important and vested property interests involved against the policy of affording relief against obsolete restrictions, focuses on value to any beneficiary owner. *See Phillips v. Donaldson,* 269 Pa. 244, 247, 112 A. 236, 238 (1920) ("Nor, under such covenant, is it necessary that the community or the majority of the lot owners whose rights under the covenant are affected should complain ... [;] ... we should not hesitate to enforce its provisions where one of the dominant owners seeks such enforcement in an unchanged locality.").

William C. Kaczynski, Pittsburgh, for appellant.

Sally K. Kaye, Pittsburgh, for Commonwealth, appellee.

Before: JOYCE, ORIE MELVIN and McCAFFERY, JJ.

OPINION BY JOYCE, J.:

¶ 1 John Carter, Appellant, appeals from the order dated May 7, 2003, which denied his petition brought pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541–9546. We affirm. The relevant facts and procedural history have been previously summarized by this Court as follows.

On October 30, 1995, Tommy Smith was walking in a public parking lot when Appellant and his co-defendant, Milo Davis, approached Mr. Smith, ordered him to the ground at gunpoint, and took his money. A few minutes later, Appellant and Davis approached George Kirkland and Albert Alston and demanded money. Mr. Kirkland began backing up and Davis fired a fatal shot at him; Mr. Alston was able to escape.

Appellant and his co-defendant were captured and charged with various offenses in connection with the two incidents. Appellant filed a pre-trial omnibus motion seeking transfer to juvenile court, the suppression of statements Appellant made to the police, severance of his trial from Davis' trial, the exclusion of his prior criminal convictions and the suppression of Albert Alston's pre-trial identification of Appellant from a photographic array on the basis that it was unduly suggestive. The motion was denied, and Appellant proceeded to a jury trial, following which he was convicted of the crimes discussed *supra.*

Appellant was sentenced to, *inter alia,* life in prison on November 26, 1996, and a post-sentence motion to modify his sentence was filed on December 5, 1996. On March 21, 1997, the trial court granted the motion to modify [in part and it was denied by operation of law in part.] ... Appellant filed a timely appeal from all of his convictions on April 21, 1997.

*Commonwealth v. Carter,* 752 A.2d 418 (Pa.Super.2000) (unpublished memorandum).

¶2 On January 12, 2000, this Court affirmed Appellant's judgment of sentence. A petition for allowance of appeal was filed with the Supreme Court and denied on June 20, 2001. *Commonwealth v. Carter,* 566 Pa. 635, 781 A.2d 138 (Pa.2001). Appellant filed a *pro se* PCRA petition on June 12, 2002 and counsel was appointed. An amended petition was filed on Appellant's behalf. Thereafter, on May 7, 2003, the PCRA court dismissed Appellant's petition without a hearing. This appeal followed, which raises the following issues for our consideration.

I. Whether the trial court erred in refusing to grant post-conviction relief or an evidentiary hearing on [Appellant's] ineffectiveness claims, where prior counsel failed to preserve all objections to a prosecution closing argument which impermissibly disparaged and ridiculed defense counsel and strategy, accusing counsel of "muddying the water," "playing dirty", (sic) "throwing an ink cloud," and attempting to "prejudice the jury," and which described the [Appellant] as having a "diminished heart and soul."

And, whether this argument also unfairly diverted the jury from its proper role of evaluating the evidence under the reasonable doubt standard, encouraged the jury to focus on defense counsel's and defendant's character, and unfairly prejudiced and undercut [Appellant's] constitutional rights to due process, [a] fair trial, the presumption of innocence, and proof beyond reasonable doubt.

II. Whether the trial court erred in refusing to grant post-conviction relief or to find the ineffectiveness of prior counsel, where prior counsel failed to assert and preserve a meritorious challenge to the voluntariness of [Appellant's] juvenile confession, and where said counsel unilaterally abandoned this issue in spite of [Appellant's] strenuous objections.

III. Whether the trial court erred in refusing to grant post-conviction relief or to find the ineffectiveness of prior counsel, where counsel failed to recognize, assert and preserve a constitutional challenge to the applicability, propriety and legality of a mandatory life sentence without parole imposed upon a juvenile convicted of felony-murder, where other jurisdictions have so ruled.

IV. Whether the trial court erred in refusing to grant post-conviction relief where [Appellant] was unconstitutionally denied his right to a jury culled from a panel which included juvenile citizens, and where prior counsel failed to assert and preserve his constitutional contentions.

V. Whether the trial court erred in refusing to grant post-conviction relief where prior appellate counsel failed to identify, raise or preserve any of the foregoing meritorious claims on direct appeal, and where prior counsel improperly abandoned and relinquished these claims over [Appellant's] strenuous objections.

Appellant's Brief, at 5 (full capitalization omitted).[1]

---

**1.** Each of Appellant's questions allege claims of ineffectiveness of all prior counsel for failing to raise and preserve the underlying merits of the question. However, Appellant's fifth issue also raises the claim of the ineffectiveness of all prior counsel. Accordingly, we will not conduct an examination of counsel's ineffectiveness for each issue since the allegation will be considered in disposing of question five. Thus, we will only address the substance of each allegation of error.

■ ¶ 3 Appellant's first issue alleges that the prosecuting attorney engaged in misconduct during the closing argument. During closing arguments, the prosecutor argued to the jury that the defense was attempting to "muddy the water" by throwing an octopus-type ink cloud over the facts. Specifically, the prosecutor stated:

So how does this wealth of information that we have and we are now talking we have (sic) eyewitness identification, fingerprints and statements, how is this degree of evidence overcome? I am reminded of a story that the writer, Victor Hugo, tells us about an octopus who really has no feet to attack its enemies like a bird, it has no claws like a lion and it has no teeth like an alligator. What the octopus does when it attacks is it releases a big pouch filled with ink into the water, and this ink is released and it clouds up the water. And the octopus swims away while the water is still muddied up, and his enemies cannot see him.

Why I tell you that is you have been given a big ink pouch in this case. I want to take that apart for you right now. What's the first element of this ink pouch? First of all, you are told that the eyewitnesses are not worthy of your belief.

N.T., 8/01/97 at 832–33. The ink bag allusion was referred to again in relation to defense counsels' attack of the identification testimony, fingerprints, police conduct, and the integrity of the evidence. *Id.* at 835, 841, 843, 847, 781 A.2d 138. Appellant contends that in doing so, the prosecutor "impermissibly and unfairly disparaged and ridiculed defense counsel and strategy, diverted the jury from its proper role of evaluating the evidence under the reasonable doubt standard, encouraged the jury to focus on defense counsel's character, and unfairly undercut [Appellant's] constitutional rights to due process, the presumption of innocence, fair trial, and proof beyond a reasonable doubt." Appellant's brief, at 15.

A prosecutor is generally allowed to vigorously present and argue his case, as long as the comments are supported by evidence and contain inferences which are reasonably derived from that evidence. It is well-settled law that attorneys' statements or questions at trial are not evidence. The focus of this Court's consideration of claims regarding prosecutorial misconduct is to determine whether the defendant was deprived of a fair trial and not whether the defendant was deprived of a perfect trial. Thus, prosecutorial remarks constitute reversible error only where the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

*Commonwealth v. Kemp,* 562 Pa. 154, 753 A.2d 1278 (2000) (citations omitted). We will evaluate Appellant's contentions with this standard in mind.

■ ¶ 4 Our review convinces us that the prosecutor's use of the literary allusion does not amount to prosecutorial misconduct. First, we note that the allusion was in response to Appellant's and his co-defendant's closing arguments wherein they attacked the various pieces of evidence in an effort to create reasonable doubt. The prosecutor was simply responding to these attempts and using oratorical flair in order to establish a theme to which the jury could relate. *See Commonwealth v. Rios,* 554 Pa. 419, 721 A.2d 1049 (1998) (a certain amount of oratorical flair is allowed to both the Commonwealth and defense during closing arguments). Furthermore, as a

result of defense objections, the trial court instructed the jury that the attorney's arguments were not evidence and that their recollection of the evidence controlled. N.T., 8/01/97, at 857. Juries are presumed to follow a trial court's instruction. *Commonwealth v. Passarelli*, 789 A.2d 708, 713 (Pa.Super.2001) (citation omitted). We cannot agree that the result of the prosecutor's comments was to "to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Kemp, supra.* Accordingly, this claim fails.[2]

¶ 5 Appellant's second issue alleges that appellate counsel was ineffective for failing to challenge the suppression court's finding that Appellant's confession was voluntarily given. When reviewing the denial of a suppression motion, this Court limits its review to "only the evidence of the prosecution and so much of the evidence for the defense as, read in the context of the record as a whole, remains uncontradicted." *In the interest of C.L.*, 714 A.2d 1074, 1075 (Pa.Super.1998). Whether a confession is constitutionally admissible is a question of law and subject to plenary review. *Commonwealth v. Templin*, 568 Pa. 306, 795 A.2d 959 (2002).

¶ 6 When evaluating the voluntariness of a juvenile's confession, "[a]ll of the attending facts and circumstances must be considered and weighed in determining whether a juvenile's confession was knowingly and freely given. Among these factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult." *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283, 1288 (1984) (superceded by statute on other grounds as stated in *Common-*

wealth v. Kocher, 529 Pa. 303, 602 A.2d 1308 (1992)). The totality of the circumstances analysis also includes, *inter alia*, consideration of the manner in which the questioning occurred, the location and duration of the questioning, and the attitude of the police. *Id.*

¶ 7 A review of the suppression transcript reveals the following. On the night of the shooting, Appellant was brought into the police station at 11:15 p.m. It was discerned that he was sixteen years old; therefore, police called the Appellant's mother's employment and left a message for her to return to the phone call. Appellant's mother replied within minutes. She was advised that Appellant had been arrested, what the charges were, that the police wanted to talk to him, that he was entitled to an attorney, and asked her to come to the police station to assist Appellant in making some decisions. Appellant's mother responded that Appellant was on house arrest, was supposed to be home by 10:30 p.m., that she was done with him, and that the police could talk to him. The police offered her transportation, but she declined. The police then advised Appellant of his rights, and of the fact that his mother was not coming. Appellant agreed to speak to them without an attorney, signed the form waiving his rights, and provided an oral and taped statement. The interview concluded at 2:42 a.m.

¶ 8 Appellant argues that his statement was coerced in that he had requested to speak to his mother so that she could get him an attorney and the detective agreed to allow him to do so but only after she answered a few questions. Appellant's mother testified at the suppression hear-

---

**2.** Appellant cites numerous cases wherein prosecutorial misconduct was found to have occurred in support of his position. Howev-

er, we do not agree with Appellant that the facts of this case rise to the level of those found in the cases upon which he relies.

ing, stating that she was told on the phone that Appellant had already cooperated with the police and that she refused to come to the station because she did not see the purpose in doing so if Appellant had already confessed. The suppression court resolved this credibility determination in favor of the Commonwealth. The Court does not revisit credibility determinations made by the suppression court and reviews testimony in the light most favorable to the Commonwealth. As such, we are not persuaded by Appellant's assertions.

¶ 9 Appellant also attacks the voluntariness of his confession by asserting that he had received a head injury prior to his arrest and was in need of medical assistance. However, there was no evidence presented to corroborate this assertion and the suppression court credited the police officer's testimony that he neither noticed an injury nor did Appellant request medical attention.

¶ 10 Lastly, Appellant asserts that the voluntariness of the confession fails for lack of presence of an interested adult. However, as discussed *supra,* the interested adult requirement was abrogated in *Williams.* Instead, the presence or absence of an interested adult is but one of many factors to be considered in assessing the totality of the circumstances surrounding the confession. In this case, the police contacted Appellant's mother, but she refused to come to the police station. Appellant stresses that no other interested adult was contacted; however, he cites no authority for the proposition that the police must continue to try to secure an interested adult *ad naseum* until they are successful. Certainly, the fact that Appellant was sixteen years of age and no interested adult was present is a factor that weighs in Appellant's favor when examining the totality of the circumstances; however, the existence of other factors weigh against a

finding that the confession was coerced. As the Commonwealth points out, Appellant had been arrested several times as a juvenile and was no stranger to the legal system. Furthermore, the interview process was initiated at 12:50 a.m. and concluded at 2:42 a.m., and was not unreasonably long. There was no evidence that the police used physical or verbal intimidation tactics to extract the confession. Moreover, Appellant signed a written waiver of rights form and then provided a written and taped confession after agreeing to speak to the police. Under the totality of the circumstances, the suppression court did not err in denying Appellant's motion to suppress the confession and this issue is without merit.

¶ 11 In his third issue, Appellant asserts that counsel was ineffective for failing to challenge the constitutionality and applicability of his mandatory life sentence without parole. The basis of this argument is Appellant's status as a juvenile and his contention that such a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

¶ 12 In its enactment of the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6365, the Legislature deemed certain acts so reprehensible to warrant the removal of a child offender from the ambience and general protections of juvenile proceedings and transfer the case to criminal court. Murder is enumerated as one of those acts. 42 Pa.C.S.A. § 6355(e). When a juvenile is charged with murder, the criminal courts automatically have original jurisdiction and the burden rests on the juvenile to prove the case should be transferred to juvenile court. However, once a juvenile's case is vested in the criminal courts, the public policies affording a juvenile different treatment than adults are no longer applicable.

*Commonwealth v. Berry,* 785 A.2d 994 (Pa.Super.2001).

¶ 13 The question of whether a life sentence imposed upon a juvenile convicted of murder constitutes cruel and unusual punishment has not been previously decided by this Commonwealth's courts. However, our Supreme Court has contemplated the question of whether the Juvenile Act violates substantive due process by "creating an impermissible presumption that juveniles accused of murder would be treated as adults." *Commonwealth v. Williams,* 514 Pa. 62, 522 A.2d 1058 (1987). The Court stated:

> Firstly, we note there is no constitutional guarantee of special treatment for juvenile offenders. Secondly, murder has always been within the original jurisdiction of the criminal division and excluded from the jurisdiction of the juvenile courts, *Commonwealth v. Pyle,* 462 Pa. 613, 622, 342 A.2d 101, 106 (1975). Appellant has cited no authority, and we know of none, why the legislature should be constitutionally prevented from making the determination that persons accused of murder should be prosecuted in the criminal division of the court of common pleas. Murder is a heinous and serious crime, and the legislature's assumption that one who commits murder is in need of adult discipline and restraint is a reasonable one. We see no reason to disturb the legislature's judgment that one, even though a juvenile, who is charged with murder be prosecuted "under the criminal law and procedures." 42 Pa.C.S.A. § 6355(e).

*Id.* 522 A.2d at 1063.

¶ 14 Following this reasoning, if a juvenile's substantive due process rights are not violated for being tried for murder in adult/criminal court, it follows that it cannot be cruel and unusual punishment to sentence the juvenile as an adult would be sentenced. It would be preposterous for the Legislature to mandate that a juvenile who commits murder be prosecuted in the criminal system but also be protected from its sanctions. If such were true, there would be no purpose in directing that the criminal court be vested with original jurisdiction in the first place.

¶ 15 In this case, Appellant's attempts at transferring his case to the juvenile arena were unsuccessful. He was tried and convicted in adult/criminal court and sanctioned accordingly to the legislatively designed punishment. This Court has previously determined that a life sentence imposed upon an adult following a felony murder conviction did not constitute cruel and unusual punishment. *Commonwealth v. Middleton,* 320 Pa.Super. 533, 467 A.2d 841 (1983). Appellant's age does not entitle him to differential treatment. Accordingly, this argument fails.

¶ 16 Appellant's fourth issue challenges the composition of his jury, essentially arguing that since Appellant was sixteen years old at the time of the offense and minors are not permitted to sit as jury persons, he was denied his Sixth and Fourteenth Amendment rights to a fair and impartial jury. The crux of Appellant's argument centers on the statutory provision governing the selection of jurors, 42 Pa.C.S.A. § 4502. That Section provides,

> (a) General rule.-Every citizen of this Commonwealth who is of the required minimum age for voting for State or local officials and who resides in the county shall be qualified to serve as a juror therein unless such citizen:
>
> (1) is unable to read, write, speak and understand the English language;
>
> (2) in incapable, by reason of mental or physical infirmity, to render efficient jury service; or

(3) has been convicted of a crime punishable by imprisonment for more than one year and has not been granted a pardon or amnesty therefor.

42 Pa.C.S.A. § 4502

¶ 17 A similar argument to the one Appellant presents has previously been entertained and rejected by our Supreme Court. In *Commonwealth v. Fisher*, 447 Pa. 405, 290 A.2d 262 (1972), the appellant was under the age of twenty-one when he proceeded to trial. Jurors were selected from a list of registered voters; at that time in order to vote one had to be twenty-one years of age. The appellant argued that because he was younger than the legislatively proscribed age for jury duty eligibility, he was denied his Sixth amendment right to a trial "by his peers." *Id.* at 266.

¶ 18 The Supreme Court summarily dismissed the Appellant's claim, stating that "[w]e cannot conclude that the legislature was acting without a rational basis in determining that the minimum age for voting was an appropriate minimum age for jury service." *Id.* Also, in *Hoyt v. Florida,* 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961) the United States supreme Court stated that "[t]he right [to an impartial jury] does not entitle one accused of crime to a jury tailored to the circumstances of the particular case, whether relating to the sex or other condition of the defendant, or to the nature of the charges to be tried. It requires only that the jury be indiscriminately drawn from among those eligible in the community for jury service, untrammelled by any arbitrary and systematic exclusions."

¶ 19 Currently, the Legislature determined that eighteen is the minimum age to be eligible for jury duty. As stated in *Fisher,* there is no basis to conclude that the Legislature was without a rational basis in deciding so. In fact, the reasoning is quite clear—matters pertaining to life and liberty should not be decided by children. Appellant was not entitled to have a jury custom-tailored to suit his particular needs. He was only entitled to what he received, a jury drawn from eligible potential jurors. For these reasons, Appellant's argument fails.

¶ 20 Appellant's last issue alleges that all prior counsel were ineffective for either failing to identify, raise or preserve the above mentioned issues.

In order to succeed on an ineffectiveness of counsel claim, Appellant must establish that the underlying claim is of arguable merit, counsel's course of action lacked any reasonable basis for advancing his client's interests, and Appellant has suffered prejudice as a result. Counsel is presumed effective and Appellant has the burden of proving otherwise. When it is clear that Appellant has failed to meet the prejudice prong [of his ineffective assistance of counsel claim], the claim may be disposed on that basis alone, without a determination of whether the first two prongs have been met.

*Commonwealth v. Fink,* 791 A.2d 1235, 1246 (Pa.Super.2002) (citations omitted). As we have previously determined that the above issues are without merit, Appellant's claim fails since counsel cannot be deemed ineffective for failing to attack a meritless issue.

¶ 21 The order of the PCRA court dismissing Appellant's petition filed pursuant to the Post Conviction Relief Act is affirmed.

¶ 22 Order affirmed.