417 A.2d 1262

**COMMONWEALTH of Pennsylvania**

v.

**Ronald KESTING, Appellant.**

Superior Court of Pennsylvania.

Argued July 24, 1979.

Filed Dec. 28, 1979.

Petition for Allowance of Appeal Denied Sept. 8, 1980.

Dennis J. Cogan, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

O'BRIEN, Judge:

Appellant, Ronald Kesting, was convicted by a jury of murder of the first degree and of robbery. Post-verdict motions were denied and appellant was sentenced to life imprisonment on the murder charge and to a term of ten to twenty years' imprisonment for the robbery conviction, to be served consecutively to the life sentence.

The instant appeal arose out of the January 18, 1977, slaying of Barbara Hughes in Philadelphia. Appellant, the victim, and another woman, Judith Bristol, became acquaintances in 1976 in Napa, California. The three travelled across the country in decedent's automobile to Philadelphia, where, in January of 1977, they together occupied a room in the Penn Center Inn. On January 18, 1977, Ms. Hughes' body was discovered in the hotel room, a victim of strangulation. Appellant and Ms. Bristol fled in the victim's automobile prior to the discovery of the body of Ms. Hughes, and were ultimately apprehended by federal authorities in Honolulu, Hawaii.

From denial of his post-verdict motions and imposition of judgment of sentence this appeal followed, raising eight assignments of error.

* Justice Henry X. O'Brien of the Supreme Court of Pennsylvania, and Judge Robert W. Honeyman of the Court of Common Pleas, Montgomery County, Pennsylvania, are sitting by designation.

First, appellant asserts the trial court erred in refusing to suppress an inculpatory statement. Appellant argues the statement should have been suppressed as the product of ineffective assistance of counsel. The facts germane to this claim of error are as follows: On January 29, 1977, appellant was arrested by federal agents in Honolulu, Hawaii, and charged with the commission of an unrelated offense. On February 1, 1977, while appellant was in federal custody in Hawaii, Honolulu counsel, Hyman Greenstein, Esquire, was appointed to represent him. Subsequently two representatives each of the Philadelphia Police and District Attorney's office travelled to Honolulu, intending to interrogate appellant. Upon arriving in Honolulu, one of the Philadelphia Assistant District Attorneys contacted Attorney Greenstein and expressed his desire to interrogate appellant. Greenstein telephoned appellant and informed him that the Philadelphia authorities wished to interrogate him; further, Greenstein told appellant that while the decision to submit to interrogation was his, appellant's, alone to make, nevertheless he, Greenstein, would recommend that appellant co-operate.

On February 4, 1977, Detective Sheldon Zucker of the Philadelphia Police Homicide Division conducted an interrogation of appellant which resulted in the inculpatory statement here at issue. Attorney Greenstein was not present at the interrogation. Appellant now argues that Attorney Greenstein provided ineffective assistance of counsel in two particulars: in advising cooperation with the Philadelphia authorities, and in not being present at the interrogation. As a result of this alleged ineffective representation, appellant argues his statement should be suppressed.

It is by now axiomatic that the standard by which counsel's effectiveness is gauged is whether the "course chosen by counsel had some reasonable basis designed to effectuate his client's interest." *Com. ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). It is however, also well settled that a finding of effective representation "depends as an initial matter, not on whether a court would

retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases." *Commonwealth v. Marsh*, 448 Pa. 292, 297, 293 A.2d 57, 61 (1972), quoting *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

Instantly, appellant's Honolulu counsel knew appellant had twice given statements to the federal authorities exculpating himself regarding the Hughes killing and insisting Judith Bristol had in fact committed the crime. Under those circumstances, we cannot find that an attorney's advice to cooperate with the police, so long as that advice makes clear that the decision ultimately lies with the accused, is, without more, ineffective assistance of counsel.

Moreover, attorney Greenstein's absence from the interrogation need not, of itself, amount to ineffectiveness. The right to have counsel present during interrogation is one which an accused may waive. *Commonwealth v. Peoples*, 483 Pa. 152, 394 A.2d 956 (1978). An inculpatory statement will not be suppressed even though obtained in the absence of counsel, where an accused's constitutional rights have been fully explained and knowingly, voluntarily and intelligently waived. *Commonwealth v. O'Bryant*, 479 Pa. 534, 388 A.2d 1059 (1978).

Appellant has not asserted below, nor does he claim here, that he was not advised of his *Miranda* rights or that his waiver of those rights was not knowing, voluntary and intelligent. The record, moreover, indicates that he was in fact so advised, and that such a waiver was made. We have not heretofore held that in these circumstances the absence of counsel constitutes ineffectiveness such as would require suppression of any statement made. We will not so hold instantly; appellant's claim is without merit.

Appellant's second assignment of error urges that the trial court erred in denying his motion to dismiss with prejudice the charges pending against him as the appropriate remedy for violation of his rights under the Interstate Agreement

on Detainers.[1]   The claimed violation occurred as follows: Appellant was arrested by federal agents in Honolulu, Hawaii, on January 29, 1977, and charged with having committed a federal offense in Philadelphia.  Appellant consented to a federal transfer on those charges from Hawaii to the Eastern District of Pennsylvania, rendering extradition unnecessary.  On February 14, 1977, appellant arrived in Philadelphia and was held as a federal prisoner in the Philadelphia Detention Center, a county facility in which both state and federal prisoners are routinely housed.  On February 15, 1977, appellant was brought before the Honorable Charles Weiner, Judge of the United States District Court for the Eastern District of Pennsylvania and pled guilty to federal bank robbery charges.  While awaiting completion of a presentence evaluation report ordered by Judge Weiner, appellant remained at the detention center as a federal prisoner.  On February 17, 1977, appellant, in the custody of federal marshalls, was arraigned on the state charges which culminated in the instant convictions.  On February 18, 1977, appellant was sentenced on the federal charges by Judge Weiner.

It may be seen, then, that as of February 18, 1977, no issue concerning the Interstate Agreement on Detainers is presented.  This is so because the act first applies only to prisoners *sentenced* in one jurisdiction;[2] second, requires that such sentenced prisoner may not be delivered into the custody of another jurisdiction except by demand properly made in accordance with the act;[3] third, that a thirty-day period must be provided following demand in which the prisoner may contest his transfer;[4] and fourth, once transferred a prisoner may not be returned to the custody of the original sentencing jurisdiction without having been timely

1.  Act of September 8, 1959, P.L. 829, 19 P.S. § 1431, et seq.  Repealed, April 28, 1978, P.L. 202, No. 53, § 2(a), effective June 27, 1978.

2.  19 O.S. § 1431, art. III(a).

3.  19 P.S. § 1431, art. III.

4.  19 P.S. § 1431, art. IV(a).

tried by the demanding jurisdiction.[5] The remedy for violation of any of the above provisions is dismissal with prejudice of the charges pending in the demanding jurisdiction.[6]

On February 18, 1977, however, upon imposition upon appellant of his sentence in federal court, the provisions of the Agreement on Detainers become the standard against which the conduct of the Commonwealth must be gauged. On that date, the District Attorney of Philadelphia sought issuance of a writ of habeas corpus in order to acquire custody of appellant. The writ issued, directing the United States Marshall and the superintendent of the Detention Center to deliver appellant into Pennsylvania custody for his preliminary hearing on February 23, 1977. On February 22, 1977, an entry was made on the records maintained by the Detention Center changing appellant's classification from federal prisoner to state prisoner. Contemporaneously, or nearly so, appellant was transferred from one cell block to another within the Detention Center.

The record indicates that at some point between February 17 and February 22, 1977, the precise date being unascertainable, the district attorney was advised by a representative of the United States Marshall's Office and possibly, although not certainly, a representative of the United States Attorney's Office, that the proper method of acquiring custody over appellant was in accordance with the Interstate Agreement on Detainers. Accordingly, appellant's preliminary hearing scheduled for February 23 was continued. On February 24, 1977, appellant's counsel informed the district attorney that appellant would not waive his rights under the agreement. On the same date a notation was made on the records of the Detention Center reclassifying appellant as a federal prisoner. On February 25, 1977, appellant was released to a United States Marshall for transport to a federal prison.

5. 19 P.S. § 1431, art. III(d).

6. 19 P.S. § 1431, art. III(d), art. IV(e), art. V(c).

Appellant asserts that his February 22 classification as a state prisoner and February 24 reclassification as a federal prisoner coupled with his transfer from one cell block to another within the Detention Center, constitutes a violation of the Agreement on Detainers and that the trial court erred in not ordering the Pennsylvania charges dismissed. For two reasons we disagree.

Whatever ambiguities may exist concerning the agreement, it is beyond cavil that its purpose is to eliminate "uncertainties which obstruct programs of prisoner treatment and rehabilitation." 19 P.S. § 1431, art. I. *United States v. Sorrell*, 413 F.Supp. 138 (E.D.Pa.1976 *aff'd.* 3 Cir., 562 F.2d 227, *cert. den.* 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978). For this reason, the provisions of the agreement are not applicable to one being held in pretrial detention. In *Commonwealth v. Hude*, 483 Pa. 489, 397 A.2d 772 (1979), considering the application of the agreement to a pretrial detainee, our Supreme Court adopted the following reasoning of the Third Circuit Court in *United States v. Dobson*, 585 F.2d 55 (3d Cir. 1978)

". . . the Agreement is only concerned that a sentenced prisoner *who has entered into the life of the institution to which he has been committed for a term of imprisonment* not have programs of treatment and rehabilitation obstructed by numerous absences in connection with successive proceedings related to pending charges in another jurisdiction." *Dobson, id.,* at 59, *Hude, supra,* 483 Pa. at 494, 397 A.2d at 774. (Emphasis supplied) *See also, United States v. Roberts,* 548 F.2d 665 (6th Cir.), *cert. den.* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246 (1977).

We agree with the conclusion in *Hude* that the above represents the expressed intent of the agreement. Under the above analysis, however, appellant is not a sentenced prisoner within the contemplation of the statute. Not having "entered into the life of the institution to which he ha[d] been committed for a term of imprisonment," appellant was not among that class of persons to whom the agreement

expressly applies.[7] Even if the facts of the instant case revealed a transfer from federal custody to state custody and back again, we would find that appellant had not yet become a person with rights secured by the agreement and hence none was violated. But secondarily we disagree with appellant's claim of error because not only was appellant not a prisoner within the contemplation of the agreement, but also the facts of the instant case do not disclose that a transfer of custody within the sense of the statute ever occurred.

The record reveals that the notation made on the Detention Center records on February 22, 1977, classifying appellant as a state prisoner was made in anticipation of an order from the United States Marshall on February 23, to surrender appellant to state authorities. The record further indicates that the expected order was never given; that prior to February 23 the district attorney in charge of the instant case orally instructed a detective not to execute the writ of habeas corpus. The writ was in fact never executed. Testimony in the court below further discloses that the transfer of appellant from one cell block to another within the detention center was without significance. Appellant had been held in cell block E, a block in which both federal and state prisoners were housed; he was transferred to cell block D, in which, again, both federal and state prisoners were detained. Finally, the record shows that the February 24, 1977, reclassification of appellant was an admission that the February 22 notation was premature and that no change in custody had actually occurred. We have unearthed no authorities, nor has appellant presented us with any, which hold that in facts such as instantly at issue a "transfer" has occurred. We hold that it has not and appellant's assertion to the contrary is without merit.

Appellant next argues the trial court erred in denying a motion for mistrial based upon an alleged breach of the rule in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

7. Appellant was released to federal marshalls for transfer to a federal prison, thus becoming a sentenced prisoner, on February 25, 1977.

The alleged *Bruton* violation occurred during the cross-examination by appellant's counsel of a Commonwealth witness, Detective Sheldon Zucker. Detective Zucker had taken appellant's statement in Hawaii, and counsel for appellant was cross-examining Zucker concerning the propriety of the interrogation and voluntariness of the statement. At the conclusion of extensive cross-examination, the following exchange occurred:

"Q: [By Defense Counsel] Now, you went out there and later you found out, at sometime, I take it, that the defendant, when he spoke to the F.B.I., denied his participation in this case. Isn't that right?

"A. I learned eventually that basically the defendants were accusing each other."

A motion for mistrial was timely made and denied. Defense counsel asked for "cautionary instructions", which the trial court understood to be a request to instruct the witness to be responsive in his answers. Thus without granting or denying the request, the court instructed the witness to "just respond to the question asked."

Following the midday recess, and while Detective Zucker was still on the stand for cross-examination, the Commonwealth, in chambers, moved that the court give a curative instruction to the jury. A lengthy discussion ensued during which the trial court indicated that defense counsel's failure to move to strike the answer and his request for cautionary instructions had led the court to misunderstand the nature of the defense's complaint. Notwithstanding, defense counsel objected to the giving of a curative instruction at that time, concluding that such an instruction would only place the matter before the jury again and thus exacerbate the prejudice.

█ We note preliminarily that although appellant has correctly identified a point in his trial where something went wrong, his characterization of the problem as a *Bruton* question is inapt. The common thread of *Bruton* cases, i. e., the introduction by the prosecution of a co-defendant's statement, admissible as against the declarant but inculpat-

ing the other, and the refusal of the declarant to submit to cross-examination, this common thread is absent instantly.

Nevertheless, appellant's discomfiture is not without justification. Clearly, Detective Zucker's response amounted to a hearsay statement prejudicial to appellant. That is not, however, to say that the statement requires reversal.

The answer at issue was, as the trial court held, responsive to the question asked. "[Y]ou found out . . . that the defendant . . . denied his participation in this case. Isn't that right?" The record indicates that an answer of either yes or no would have been untrue. Appellant had not denied his participation in "this case," but rather had denied he had killed the victim. The witness, as the trial court noted, did the best he could to answer a question difficult of answering.

Moreover, counsel did not move to strike the response, did not ask that the court rule on his request for cautionary instructions, and when the Commonwealth moved for such instructions, defense counsel objected. He may not now be heard to complain. See, *Commonwealth v. Moore*, 228 Pa. Super. 49, 323 A.2d 25 (1974).

Appellant next asserts the evidence adduced at trial was insufficient in law to support the verdict of guilty of robbery. Specifically, appellant relies upon the language of § 3701 of the Crimes Code defining the offense of robbery, providing that "a person is guilty of robbery if, *in the course of committing a theft*, he: (a) inflicts serious bodily injury upon another . . ." (emphasis supplied). Appellant thus argues that the evidence must show that it was the intent of the actor to commit a theft when the injury or threat of injury was inflicted.

"As an aggravated form of larceny, robbery requires an intent to steal. The intent must exist at the time of the taking of the property. It is immaterial at what earlier point of time the intent was formed. Thus a defendant

intending to commit another crime is guilty of robbery if in the course of the commission or attempt to commit the other crime he forms the intent of robbery and does rob. When the defendant took property from the victim after he had beaten him in a fight, he is guilty of robbery without regard to whether he had formed the intent of taking the property after he had beaten the victim." Wharton, Criminal Law, Vol. 2, § 578.

Neither our cases on robbery nor those analagous cases dealing with felony-murder have required an exact contemporaneity of the assault and the intent to steal. *See, e. g., Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977). We decline to do so here.

Appellant next asserts the district attorney engaged in prosecutorial misconduct in his summation to the jury and in his examination and cross-examination of witnesses. Particularly appellant complains the prosecutor injected his personal opinions concerning guilt and degree of guilt into the proceedings.

We note initially that the court properly, and at length, charged the jury to consider the summations of counsel as argument only, and neither as evidence nor proof. Secondly, it is well settled that "[e]very unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial. A new trial is required when the remark is prejudicial; that is when it is of such a nature or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973). Finally, we find no expressions of personal opinions as to guilt or degree of guilt in the prosecutor's argument. "Were we to include phrases like 'I submit' and 'I suggest' among those forms of argument deemed improper, we would virtually destroy the Commonwealth's recognized right to argue fair inferences arising from the evidence to the jury." *Commonwealth v.*

*Tolassi*, 258 Pa.Super. 194, 392 A.2d 750 (1978). Accordingly, we hold that appellant's contention is without merit.

Appellant next assigns as error rulings by the trial court during the Commonwealth's cross-examination of appellant which permitted impeachment on a collateral matter. Two such rulings by the trial court are particularly assigned: one which permitted the prosecution to inquire of appellant whether he had ever lied concerning his ownership of a tavern; and one which permitted cross-examination concerning appellant's relationship with his child and with his former wife.

It is, of course, true that "a witness may not be contradicted on 'collateral' matters," and that a collateral matter is one which has "no relationship to the case on trial." *Commonwealth v. Petrillo*, 341 Pa. 209, 19 A.2d 288 (1941), *Commonwealth v. Fisher*, 447 Pa. 405, 290 A.2d 262 (1972). But the error in permitting such cross-examination is not reversible in every case. Rather, our review must ascertain whether "the attempted impeachment—even though impermissible—was of such a prejudicial nature as to warrant the grant of a new trial." *Fisher, id.*, 447 Pa. at 414, 290 A.2d at 267. Instantly, particularly in light of the trial court's reiterated instructions to the jury to weigh the evidence only and to disregard the irrelevancies of prejudice and emotion, we do not find the impermissible impeachment to have been of such a prejudicial nature as to warrant a new trial.

Appellant next argues the trial court erred in refusing to instruct the jury that in assessing credibility they should consider that the police may have an interest in the outcome of the case. This allegation, however, was not presented to the court below in written post-verdict motions, was not brief or argued there. In accordance with *Commonwealth v. Williams*, 473 Pa. 140, 373 A.2d 1087 (1977), the claim is thus not preserved for our review. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

■ Finally, appellant asserts the trial court erred in not sufficiently redacting his statement. Prior to the introduction of appellant's confession the trial court, upon defense motion, ordered it redacted to eliminate all references to the bank robbery appellant committed to finance his flight to Hawaii. Appellant now argues his statement should have been redacted to eliminate all references to the amount of money in his possession immediately following and subsequent to the killing. Since the Commonwealth's evidence showed only that appellant stole $200 from the victim, appellant argues the non-redacted statement necessarily led the jury to infer either the appellant robbed the victim of more money than the Commonwealth's evidence showed, or that another robbery was committed. No authority is presented for appellant's position.

We cannot agree with appellant that the jury was inexorably led to speculate, to appellant's prejudice, by the non-redacted statement. Moreover, we do not agree, in the absence of authority to the contrary, that an accused's statement must be redacted to eliminate *every conceivable* prejudicial inference. This is particularly so in the instant case, where appellant was, after all, charged with robbery. Evidence of the sums of money in appellant's possession was a legitimate area of inquiry.

As Mr. Justice, now Chief Justice, Eagen stated in *Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964), relying upon *Commonwealth v. Ferrigan*, 44 Pa. 386 (1863):

"When, therefore, the quo animo is so important an element as it is in murder under our statute . . . the motive is important, and may be traced to or through other and distinct crimes." See also, *Commonwealth v. Scoleri*, 399 Pa. 110, 160 A.2d 215 (1960).

Accordingly, we find no merit in appellant's claim of error.

Judgments of sentence affirmed.