Whitehead, J.
Nature of Proceedings
The defendant stands indicted on charges of murder and armed assault in a dwelling. The charges arise out of the beating death of Michael Monahan, which occurred at a motel in Salisbury on August 30, 1998. The defendant has moved to suppress statements which he gave to detectives from the Salisbury Police Department and the Massachusetts State Police while he was being held in custody on unrelated charges at the Salem, New Hampshire, police station, on September 1, 1998. The Court conducted a hearing relative to the motion on November 30, 1999. The following constitute the Court’s findings of fact, rulings of law and order on the motion.
Findings of Fact
At approximately 11:00 a.m. on August 30, 1998, police responded to the Salisbury Inn in Salisbury. Inside of a room at that location, they found the dead body of Michael Monahan. His death was the apparent result of blunt force trauma. The police began witness interviews in an effort to identify Monahan’s killer. By the afternoon of August 30, they had learned that the defendant had been involved in an altercation with Monahan on the previous day. During that altercation, Monahan had struck the defendant in the face with a beer bottle. Angered, the defendant had responded by threatening to beat Monahan up with a bat.
Having become aware that the defendant had possessed both the motive and, perhaps, the intent to kill Monahan, the police wished to speak with him. However, his whereabouts were unknown. There were warrants outstanding for his arrest on charges of malicious destruction of property valued at less than $250 and operating a motor vehicle after suspension of his license.
On the morning of August 31, 1998, Trooper Bruce Reid of the Massachusetts State Police, a member of the team investigating Monahan’s killing, received an electronic page directing him to telephone Attorney Raymond O’Hara, of Newton. Trooper Reid, in fact, did call Attorney O’Hara. The two had a relaxed conversation. During the conversation, Attorney O’Hara stated that he represented the defendant and that the defendant would turn himself in on the outstanding warrants. Attorney O’Hara further stated that he had spoken with the defendant about “the incident in Salisbury,” that he, Attorney O’Hara, believed the defendant had not been involved in the “incident” and that he had “no problem” with the defendant talking to the police about the “incident.” He added that he had advised the defendant that he could stop talking to the police whenever he wished. Attorney O’Hara did not ask whether the defendant was a witness or a suspect in “the incident.” Trooper Reid volunteered nothing in that regard. When the conversation concluded, Trooper Reid related its substance to Detective Richard Simmons of the Salisbury Police Department. Detective Simmons was also a member of the team investigating Monahan’s death.
During an interview conducted in the mid-afternoon of August 31, one Joshua Hancock told the police that, in the early morning hours of August 30, he had accompanied a group of individuals who had travelled by car from a location in New Hampshire to the Salisbury Inn. The defendant had been a member of that group. Once the car had arrived at the motel, the defendant and a female had exited the vehicle and headed toward the building. They had returned shortly thereafter. Upon his return the defendant had been carrying a baseball bat. Entering the vehicle he had stated, “That guy’s never gonna wake up.”
The defendant had not surrendered himself by the end of the day on August 31. On the morning of September 1, 1998, Detective Simmons received a call from Attorney O’Hara. Attorney O’Hara stated that the defendant now wished to meet with the police in New Hampshire. He would not meet in Massachusetts because of the outstanding warrants.[1] Attorney O’Hara acknowledged to Detective Simmons that he knew that the defendant likely would be arrested on the warrants even though he was in New Hampshire, and Detective Simmons confirmed that fact. Attorney O’Hara stated that the meeting would occur at a Bickford’s restaurant at 11:00 a.m. that morning, in Salem, New Hampshire, and that the defendant would be accompanied by a female. Detective Simmons asked if Attorney O’Hara would be present. Attorney O’Hara replied in the negative, adding that he had advised the defendant not to answer questions if he did not want to. At some point during the conversation, Detective Simmons told Attorney O’Hara that the *236 matter about which the police wished to talk with the defendant was, in fact, a homicide.
Not long after his conversation with Attorney O’Hara had concluded, Detective Simmons received another call, this time from an anonymous party. The caller stated, “Don’t believe O’Hara. Keohane’s gonna screw.” The caller stated that the defendant currently was staying in Room 21 of the Park View Motel, in Salem. The motel was within walking distance of Bickford’s restaurant.
Trooper Reid and Detective Simmons called the Salem Police Department and apprised authorities there of the situation. They stated that they would be coming to Salem in order to arrest the defendant on the outstanding Massachusetts warrants, and they requested the assistance of Salem officers in making that arrest. Immediately thereafter, they headed for Salem.
In the interim, Salem officers set up a surveillance in the area of Bickford’s restaurant. They also learned that the defendant had checked out of the Park View earlier that morning. Shortly before 11:00 a.m., just as Trooper Reid and Detective Simmons were arriving on the scene, the Salem officers observed the defendant, in the company of a female, using a pay phone located at a gasoline station adjacent to the Bickford’s parking lot. The officers placed the defendant under arrest as a fugitive from justice, based upon the Massachusetts warrants. Then, they transported him to the Salem Police Station, where he was booked.
When the booking was completed, Trooper Reid and Detective Simmons conducted an interview of the defendant. The interview occurred in a room separate from the booking area. The conversation was tape-recorded. (A substantially accurate transcript of the tape recording was admitted as Exhibit 1 at the hearing on the motion to suppress.) The officers commenced the interview by inquiring of the defendant concerning his representation by Attorney O’Hara. The defendant acknowledged that he had spoken with Attorney O’Hara and that counsel had advised him, among other things, “[t]o tell them whatever I have to say I guess. He said if they ask you questions that you feel uncomfortable about you don’t have to answer them.” (Interview, p. 3.) In response to a question from Trooper Reid, the defendant stated that he was “comfortable” with speaking to the officers despite the absence of Attorney O’Hara. (Interview, p. 3.)
The officers then advised the defendant of his Miranda rights, and asked him if he wished to speak to them. The defendant replied in the affirmative and signed a written acknowledgment of his rights. For the next hour and a quarter, the officers asked the defendant about the events surrounding the killing of Michael Monahan. The defendant eventually concluded the interview by saying, “I’m all done.” (Interview, p. 74.)[2] Thereafter, the police tested the body of the defendant for the presence of blood. Having completed the test, they transported him to a New Hampshire Court, where he was arraigned on the fugitive charge. He waived rendition. They then returned him to Massachusetts, where he was charged with murder.
Rulings of Law and Discussion
The defendant initially sought suppression of his statements to Trooper Reid and Detective Simmons on two grounds: 1) the statements occurred during an unreasonable delay in his arraignment as a fugitive; and 2) the statements were the product of ineffective assistance of counsel on the part of Attorney O’Hara. However, at the conclusion of the hearing on the motion, the defendant waived the argument concerning delay in arraignment. That waiver reflects a realistic view of relevant caselaw. See, e.g., State v. Hughes, 494 A.2d 85 (Rhode Island, 1985).
The one argument remaining, then, is the argument that, by advising the defendant that he might speak to the police if he wished, Attorney O’Hara gave him ineffective assistance of counsel and that, being the product of such ineffective assistance, the defendant’s statement must be suppressed. In that regard, the right to effective assistance of counsel is only as broad as the right to counsel on which it rests. Commonwealth v. Jones, 403 Mass. 279, 286 (1988). “(I]t has been firmly established that a person’s Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him.” Id., citing Kirby v. Illinois, 406 U.S. 682, 688 (1972). The same is true with respect to the right to counsel under Article 12 of the Massachusetts Declaration of Rights. Id. In the present case, as of the time of his interview by the police, no adversary proceedings had commenced against the defendant relative to the charge of murder. Therefore, he possessed no right to counsel at all relative to that charge. Moreover, because he had no right to counsel at all, he could not have been denied the right to the effective assistance of counsel. Compare People v. Claudio, 59 N.Y. 556 (1983). While adversary proceedings may have been pending in Massachusetts relative to the crimes of malicious destruction of property or operating after suspension,[3] the offenses which gave rise to his arrest, “[T]he Sixth Amendment right ... is offense specific ... it cannot be invoked once for all future prosecutions ...” Commonwealth v. Chase, 42 Mass.App.Ct. 749, 756 (1997).[4]
Even if the defendant had possessed a right to the assistance of counsel during the interview, the test for determining whether the assistance rendered was ineffective would be that articulated in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), the first prong of which involves a determination of “whether there has been serious incompetency, insufficiency or inattention of counsel — behavior of counsel falling measurably below that which may be expected from an ordinary fallible lawyer." In order to establish ineffec *237 tive assistance of counsel, the burden would be on the defendant to demonstrate such incompetence. See Saferian, supra. See also Commonwealth v. Brookins, 33 Mass.App.Ct. 626, 631 (1992). On the present record, the Court cannot find that burden to have been met.
While an attorney will rarely be wrong in advising his client not to speak with the police, there may be occasions where, in fact, it is beneficial to speak. In the present case, the Court is without sufficient information concerning what the defendant told Attorney O’Hara before his arrest, and what other knowledge was available to Attorney O’Hara, for it to assess whether the advice which he gave to the defendant, i.e., “speak with the police or don’t speak with the police, as you please,” was a misjudgment reflecting incompetence. See generally, Commonwealth v. Resting, 274 Pa.Super. 79, 417 A.2d 1262 (1979) (where defense counsel knew that defendant had twice given statements to federal authorities exculpating himself regarding murder and insisting that another had, in fact, committed the crime, counsel’s advice to defendant to cooperate with police, so long as it made clear that decision ultimately lay with defendant, was not, without more, ineffective assistance of counsel).
Setting aside the Sixth Amendment issue, the defendant alternatively poses the issue as one involving the Fifth and Fourteenth Amendments. He asserts that the defendant’s waiver of his Miranda rights and the statements which followed the waiver were “involuntary” due to the advice rendered by Attorney O’Hara. However, the Court sees nothing in the circumstances surrounding the defendant’s interview to suggest that Attorney O’Hara’s advice interfered in any way with the defendant’s ability to understand accurately his Miranda rights or to exercise a voluntary waiver of those rights. There is also nothing to suggest that the defendant’s statements themselves were anything other than the product of his own free will and a rational intellect. Compare Commonwealth v. Stirk, supra at 911-13.[5] Essentially, Attorney O’Hara told the defendant what Miranda required the police to tell him, i.e., that it was his choice whether or not to speak.
ORDER
Accordingly, the Court ORDERS that the motion to suppress statements be DENIED.

Attorney O’Hara did not explain the defendant’s apparent change of heart concerning a surrender on the warrants.

During the interview, the defendant displayed no signs of intellectual or emotional impairment by reason of the ingestion of drugs or alcohol, or by reason of any other factor.

In point of fact, the evidence did not indicate whether the defendant had ever been arraigned on the charges in Massachusetts.

In Commonwealth v. Moreau, 30 Mass.App.Ct. 677, 679 (1991), the Appeals Court seemed to suggest that the right to effective assistance of counsel is implicated not only in the Sixth Amendment right to counsel but also in the Fifth Amendment right against self-incrimination. In support of that suggestion, it cited, among other cases, Commonwealth v. Stirk, 392 Mass. 909, 913 (1984). However, the decision of the Supreme Judicial Court in Stirk makes it clear that actions undertaken by counsel are relevant to a claimed Fifth Amendment violation only insofar as they affect the voluntar-iness of the defendant’s waiver of his Miranda rights and the voluntariness of any statements given. In that context, the effectiveness of counsel's assistance, in and of itself, is not an issue. Id at 911-13. The voluntariness of this defendant's statements is addressed, infra.

The Court recognizes that, once the issue is put into play, the burden of proving “voluntariness" beyond a reasonable doubt rests with the Commonwealth. See, e.g., Commonwealth v. Tavares, 385 Mass. 140 (1982). It is the Court’s conclusion that the Commonwealth has met its burden here.