J-A22015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                        :         PENNSYLVANIA
                                       :
            v.                       :
                                       :
                                     :
JONATHAN NUNEZ,                : 
                                       :
           Appellant          :     No. 3166 EDA 2018

Appeal from the PCRA Order Entered October 19, 2018
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0004281-2012

BEFORE:   MURRAY, J., STRASSBURGER, J.*, and PELLEGRINI, J.*

MEMORANDUM BY MURRAY, J.:         **FILED SEPTEMBER 06, 2019**

Jonathan Nunez (Appellant) appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

A prior panel of this Court recounted:

[W]e need only provide a brief summary, as follows: David Bonaskiewich was walking his dogs on Lanze Road, Salisbury Township, Lehigh County, Pennsylvania, between 7:00 and 8:00 p.m. on July 5, 2012. One of the dogs stopped and stared intently into a wooded area along the road. From his position on the side of the road, Mr. Bonaskiewich observed a human body ten to fifteen feet into the woods. Mr. Bonaskiewich called his wife, and she contacted the police.

The police investigation led to identification of the victim and Appellant's arrest. Appellant confessed to killing the victim by beating her and cutting her throat; he also poured bleach on the body. Appellant was charged with one count of homicide. He filed omnibus pretrial motions, including a motion to suppress his

_____

*Retired Senior Judge assigned to the Superior Court.

statements to the police and physical evidence. The trial court conducted a hearing on March 11, 2013, and it denied Appellant's pretrial motions on April 19, 2013. Order and Opinion, 4/19/13.

Appellant's jury trial began on August 12, 2013, and the jury found him guilty of first degree murder on August 19, 2013. N.T., 8/12/13, at 2; N.T., 8/19/13, at 100. The trial court sentenced Appellant to life imprisonment without the possibility of parole. Sentencing Order, 8/30/13. Appellant filed post-sentence motions on September 9, 2013, which the trial court denied on December 24, 2013. Order and Opinion, 12/24/13.

Between the filing of Appellant's post-sentence motions in September of 2013 and the trial court's decision thereon in December of 2013, Appellant filed a supplemental motion raising ineffective assistance of pretrial counsel. Additionally, trial and post-sentence counsel filed a motion to withdraw. The trial court held hearings on both motions. N.T., 11/1/13 and N.T., 12/10/13, respectively. Although the trial court permitted counsel to withdraw as Appellant's private attorney, it appointed him to represent Appellant through post-sentence motions and the filing of an appeal. Order, 12/10/13.

On May 19, 2014, Appellant informed the trial court by letter that counsel had not filed an appeal. In response, the trial court appointed a public defender to investigate Appellant's claim and file any appropriate motions. Order, 5/19/14. The next day, previous counsel acknowledged his failure to file Appellant's direct appeal and filed a notice of appeal *nunc pro tunc*. Memorandum in Support of Appeal Nunc Pro Tunc, 5/20/14, at ¶ 8; Notice of Appeal, 5/20/14. The trial court denied counsel's request for an appeal *nunc pro tunc*. Order, 5/22/14. The public defender filed a petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.[A.] §§ 9541-9546, on May 22, 2014, alleging, *inter alia*, prior counsel's ineffectiveness for failing to file an appeal. PCRA Petition, 5/22/14. Following a hearing, and without objection from the Commonwealth, the [PCRA] court reinstated Appellant's appeal rights *nunc pro tunc*. Order, 6/27/14. Appellant filed a timely notice of appeal *nunc pro tunc* on July 1, 2014[.]

*Commonwealth v. Nunez*, 3141 EDA 2014 at 1-3 (Pa. Super. Mar. 15, 2016)

(unpublished memorandum, footnote omitted).

On March 15, 2016, this Court affirmed Appellant's judgment of sentence. *See id.* at 21. On August 17, 2016, our Supreme Court denied Appellant's petition for allowance of appeal.

On May 16, 2017, Appellant filed a *pro se* PCRA petition. On May 22, 2017, the PCRA court appointed counsel, who filed an amended PCRA petition on November 16, 2017. Appellant challenged pre-trial counsel's effectiveness with respect to his police interview and confession, and trial counsel's effectiveness regarding the failure to call an expert witness in support of Appellant's diminished capacity defense. On July 25, 2018, the PCRA court held a hearing on Appellant's petition. On October 19, 2018, the PCRA court denied the petition. This timely appeal followed.

On appeal, Appellant presents the following issue for review:

A. WHETHER THE [PCRA] COURT ERRED IN DENYING [APPELLANT]'S REQUEST FOR POST-CONVICTION RELIEF WHEN [APPELLANT] WAS RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY PRE[-]TRIAL COUNSEL ALLOWING [APPELLANT] TO GIVE INCRIMINATING STATEMENTS TO THE POLICE AND TRIAL COUNSEL WHO FAILED TO COMPLY WITH DISCOVERY DEADLINES WHICH PRECLUDED [APPELLANT] FROM PRESENTING THE PSYCHOLOGICAL REPORTS AND THE CLINICAL AND FORENSIC PSYCHOLOGIST AS PART OF HIS DEFENSE?

Appellant's Brief at 7.

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of

the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." ***Id.***

Appellant's sole issue on appeal raises two allegations of ineffective assistance of counsel. In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. ***Commonwealth v. Bomar***, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." ***Id.*** (citation omitted). To demonstrate prejudice in an ineffective assistance of counsel claim, "the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Commonwealth v. King***, 57 A.3d 607, 613 (Pa. 2012). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. ***Bomar***, 104 A.3d at 1188.

First, Appellant argues that pre-trial counsel was ineffective during his interview with the police. Specifically, Appellant asserts that pre-trial counsel was ineffective for allowing the interview to continue for over six hours and for failing to realize that Appellant was not innocent before Appellant gave the police incriminating statements.

Unfortunately, pre-trial counsel is deceased and was thus unavailable to testify at the evidentiary hearing on Appellant's PCRA petition. PCRA Court Opinion, 10/19/18, at 10. The PCRA court, however, summarized pre-trial counsel's testimony from a prior hearing relating to his representation of Appellant during the police interview:

> [Pre-trial counsel] informed [Appellant] that he did not have to talk to the detectives, but [Appellant] kept denying any role in [the victim]'s death, and indicated that he wanted to "clear up" his side of the story and the rumors he was hearing via text messages and on "Facebook." On July 30, 2012, [pre-trial counsel] met with [Appellant] (and his parents) after [Appellant] returned to the Lehigh Valley in [Pre-trial counsel]'s law office. [Pre-trial counsel] believed, at the time, that [Appellant]'s return to the area after leaving the country made [Appellant]'s story credible.
>
> [Pre-trial counsel] met with [Appellant] alone for [one-and-a-half] to two hours. Again, [pre-trial counsel] told [Appellant] that he did not need to talk to the detectives and told him that the detectives were not giving [pre-trial counsel] much information. [Pre-trial counsel] told [Appellant] that, whatever he decided to do, he needed to tell the truth because any lies would be discovered.
>
> *       *       *
>
> On the morning of his interview with police (August 1, 2012), [Appellant] came to [pre-trial counsel]'s office. . . . [Appellant] then gave [pre-trial counsel] a detailed account of the days surrounding the victim's murder. At that time, [Appellant] told [pre-trial counsel] that he knew the victim, but that the two did not have any relationship. [Appellant] continued to indicate that he wished to talk to the police to clear his name. [Pre-trial counsel] and [Appellant] drove to the Salisbury Police Department together. In the car, [pre-trial counsel] told [Appellant] that the police would issue *Miranda* warnings and that [Appellant] could still elect to remain silent.

- 5 -

[Pre-trial counsel] was seated next to [Appellant] during the entire course of the interview. Numerous breaks were taken during the course of the interview with the police and [pre-trial counsel] indicated at the Hearing that he repeatedly told [Appellant] that he could stop talking at any time. Upon reflection, [pre-trial counsel] recalled that for the first half of the interview, he believed that [Appellant] was innocent of any crime having to do with the victim. When [pre-trial counsel] realized that [Appellant] was blatantly lying to the detectives, he requested a break. [Pre-trial counsel] recalled that he told [Appellant] that he had two choices: to stop talking to the detectives, or to stop lying to them. [Appellant] continued to insist that he didn't kill [the victim] and ultimately chose to keep talking to the police.

PCRA Court Opinion, 10/19/18, at 10-12 (quoting Trial Court Opinion, 12/24/13, at 22-25); *see also* N.T., 11/1/13, at 50-62.

In rejecting Appellant's ineffective assistance of counsel claim as to pre-trial counsel, the PCRA Court stated:

Based on the foregoing, we find pre-trial counsel's actions reasonable under the circumstances. [Pre-trial counsel] recalled that for the first half of the interview, he believed that [Appellant] was innocent of any crime having to do with the victim. When [pre-trial counsel] realized that [Appellant] was blatantly lying to the detectives, he requested a break. [Pre-trial counsel] testified that he told [Appellant] that he had two choices: to stop talking to the detectives, or to stop lying to them. [Appellant] was provided with sound legal advice but continued to insist that he didn't kill [the victim] and ultimately chose to keep talking to the police. Counsel cannot be held ineffective for failing to override a client's decision. . . . Therefore, we find no merit to [Appellant]'s allegations against pre-trial.

PCRA Court Opinion, 10/19/18, at 13-14.

We agree. The record reflects that pre-trial counsel initially believed Appellant's claims of innocence and consequently, advised him to cooperate with police. *Id.* at 10-12; *see also* N.T., 11/1/13, at 50-62. Pre-trial counsel

- 6 -

additionally advised Appellant that he did not have to speak with police, but that if he did, he should not lie to the police. *Id.* The record further reflects that pre-trial counsel stayed with Appellant throughout the duration of the interview, and that when pre-trial counsel perceived Appellant to be lying, he stopped the interview and privately told Appellant to either stop lying or stop the interview. *Id.* Appellant nevertheless continued speaking with the police and eventually confessed to the murder. *Id.*

Therefore, the record supports the PCRA court's determination that pre-trial counsel's advice to Appellant was reasonable, as counsel cannot be ineffective for advising his client to cooperate with the police when the client insists he is innocent. *See Commonwealth v. Kesting*, 417 A.2d 1262, 1265 (Pa. Super. 1979) ("Under those circumstances, we cannot find that an attorney's advice to cooperate with the police, so long as that advice makes clear that the decision ultimately lies with the accused, is, without more, ineffective assistance of counsel."). Accordingly, because pre-trial counsel's actions were reasonable, we conclude that the PCRA court did not abuse its discretion in dismissing this ineffective assistance of counsel claim. *See Bomar*, 104 A.3d at 1188.

Second, Appellant argues that trial counsel was ineffective for failing to comply with the discovery deadline for submitting the expert report of Dr. Frank Dattilio (Dr. Dattilio), thereby precluding trial counsel from calling Dr. Dattilio as an expert witness at trial. Appellant maintains that trial counsel

could have used Dr. Dattilio's testimony to present "evidence regarding [Appellant]'s physical and emotional state as affected by the substances that he had taken [] during the incident that led up to the homicide." Appellant's Brief at 20.

"Evidence is sufficient to sustain a conviction of first-degree murder where the Commonwealth establishes that: (1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill." *Commonwealth v. Haney*, 131 A.3d 24, 33 (Pa. 2015). "Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another." *Id.* at 36 (quotations and citation omitted). With respect to the diminished capacity defense to first-degree murder, our Supreme Court has explained:

A diminished capacity defense "does not exculpate the defendant from criminal liability entirely, but instead negates the element of specific intent." *Commonwealth v. C. Williams*, 980 A.2d 510, 527 (Pa. 2009). For a defendant who proves a diminished capacity defense, first-degree murder is mitigated to third-degree murder. *Commonwealth v. Saranchak*, 866 A.2d 292, 299 (Pa. 2005). To establish a diminished capacity defense, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill. *Commonwealth v. Rainey*, 928 A.2d 215, 237 (Pa. 2007); *Commonwealth v. Spotz*, 896 A.2d 1191, 1218 (Pa. 2006). The mere fact of intoxication does not give rise to a diminished capacity defense. *Spotz*, *supra*; *Commonwealth v. Blakeney*, 946 A.2d 645, 653 (Pa. 2008) (requiring that a defendant show that he was "overwhelmed to the point of losing his faculties and sensibilities" to prove a voluntary intoxication defense). Evidence that the defendant lacked the ability to control his or her actions or acted impulsively is irrelevant to specific intent to kill, and thus is not admissible to support a diminished

- 8 -

capacity defense. ***Commonwealth v. Vandivner***, 962 A.2d 1170, 1183 (Pa. 2009). Furthermore, diagnosis with a personality disorder does not suffice to establish diminished capacity. ***Commonwealth v. Bracey***, 795 A.2d 935, 946 (Pa. 2001).

***Commonwealth v. Hutchinson***, 25 A.3d 277, 312 (Pa. 2011) (citations modified).

The PCRA court rejected Appellant's claim, explaining that trial counsel initially decided not to submit Dr. Dattilio's expert report or call him as a witness because he could not offer testimony helpful to a diminished capacity defense. PCRA Court Opinion, 10/19/18, at 18-19. Although trial counsel unsuccessfully attempted mid-trial to call Dr. Dattilio as a witness in a last-ditch effort to save Appellant when the evidence of his guilt appeared to be substantial, the PCRA court determined that trial counsel's initial actions in declining to utilize Dr. Dattilio's report and testimony were reasonable. ***Id.*** The PCRA court determined that Appellant was not prejudiced by trial counsel's inability call Dr. Dattilio as a witness because, at best, Dr. Dattilio could only offer testimony regarding Appellant's personal background, which was not relevant to a diminished capacity defense. ***Id.***

We agree. At Appellant's PCRA hearing, Dr. Dattilio testified that trial counsel retained him to conduct a psychological evaluation of Appellant to determine whether Appellant had a viable diminished capacity defense. N.T., 7/25/18, at 12. After examining Appellant and reviewing all of the relevant documents, Dr. Dattilio determined that Appellant suffered from no significant mental health disorders, learning disabilities, or prior head trauma, and that

he was likely not under the influence of any drugs or alcohol on the night he killed the victim. *Id.* at 15-16, 24-28, 35-36. Indeed, Dr. Dattilio was of the opinion that Appellant did not have any mental health or substance abuse issues that would have impeded Appellant from forming the specific intent to kill. *Id.* at 15-19, 35-36. Thus, Dr. Dattilio informed trial counsel that he would be unable to provide the defense with any helpful testimony. *See id.* at 15, 44-45. For these reasons, trial counsel determined that Dr. Dattilio would not be a helpful witness. *Id.* at 45-49. Trial counsel explained that the only reason he even attempted to call Dr. Dattilio as a witness was as a last-ditch effort to help Appellant's case. *Id.*

Because Dr. Dattilio's testimony would not have helped Appellant establish a diminished capacity defense, trial counsel's decision not to call Dr. Dattilio as a witness was reasonable and did not prejudice Appellant. As Appellant admits in his appellate brief, Dr. Dattilio's testimony was "clearly not relevant for purposes of a mental health or mental disability defense[.]" Appellant's Brief at 21. While Appellant cryptically suggests that Dr. Dattilio's testimony would have been relevant to establish Appellant's "cognitive abilities" at the time of the homicide, Appellant's Brief at 21, he fails to develop this assertion or otherwise explain how Dr. Dattilio's testimony would have benefited him at trial. Accordingly, as trial counsel's failure to call Dr. Dattilio was reasonable and did not prejudice Appellant, the trial court did not abuse

its discretion in dismissing this ineffective assistance of counsel claim. ***See***

***Bomar***, 104 A.3d at 1188.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/6/19